**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| D.C. individually and o/b/o T.C. | : | |
| | : | |
| | : | Civil Action No.: 12-CV-05592(KSH-CLW) |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| MOUNT OLIVE TOWNSHIP BOARD OF EDUCATION | : | |
| | : | |
| Defendant. | : | |
| | : | |
| | : | |

**Opposition to Plaintiffs' Motion for Summary Judgment**

SCHENCK, PRICE, SMITH & KING, LLP
220 Park Avenue
P.O. Box 991
Florham Park, New Jersey 07932
Attorneys for Defendant,
Mount Olive Township Board of Education

Of Counsel:  Robin S. Ballard

## TABLE OF CONTENTS

TABLE OF AUTHORITIES..........................................ii

PRELIMINARY STATEMENT.......................................... 1

PROCEDURAL HISTORY............................................. 2

STATEMENT OF FACTS............................................ 3

LEGAL ARGUMENT................................................ 6

I. PLAINTIFFS ARE NOT ENTITLED TO SUMMARY JUDGMENT............. 6

II. STANDARD OF REVIEW......................................... 8

III. PLAINTIFFS INCORRECTLY CONTEND THAT MOUNT OLIVE VIOLATED
T.C.'s RIGHT TO A FREE APPROPRIATE PUBLIC EDUCATION.......... 10

IV. PLAINTIFFS' ARGUMENTS THAT WERE NOT RAISED IN THE DUE
PROCESS PETITION SHOULD NOT BE CONSIDERED BY THIS COURT....... 26

CONCLUSION................................................... 37

## <u>TABLE OF AUTHORITIES</u>

<u>CASES</u>

<u>A.Z. v. Mahwah Twp. Bd. of Educ.</u>,
2006 U.S. Dist. LEXIS 22305 (D.N.J.) ......................... 28

<u>Bd. of Educ. of the Hendrick Hudson Cent. Sch. Dist. v. Rowley</u>,
    458 U.S. 176, 102 S.Ct. 3034 (1982) .............. 9, 11, 13, 21

<u>Brown v. Sch. Dist. of Phila.</u>, 2012 WL 3064022 (E.D. Pa. 2012) 11

<u>C.J. and D.J. o/b/o B.J. v. Ocean City Board of Education</u>,
OAL Dkt. No. EDS 6499-02 (2004) ............................... 13

<u>Carlisle Area Sch. v. Scott P.</u>, 62 F.3d 520 (3d Cir. 1995) ..... 9

<u>Celotex Corp. v. Catrett</u>,
477 U.S. 317 (1986); <u>cert.</u> <u>denied</u>, 484 U.S. 1066 (1988) ....... 7

<u>D.B. v. Ocean Twp. Bd. of Educ.</u>,
985 F. Supp. 457 (D.N.J. 1997) ............................... 9

<u>Dracut Sch. Comm. V. Bureau of Spec. Educ. App. Of the Mass.
  Dep't of Elem. and Secondary Educ.</u>,
737 F.Supp.2d 35 (D. Mass. 2010) ............................. 18

<u>G.N. v. Bd. of Educ. of Livingston</u>,
309 Fed. Appx. 542 (3d Cir. 2009) ........................... 18

<u>K.G. and J.G. o/b/o O.G. v. Morris Board of Ed.</u>,
OAL Dkt. No. EDS 11872-06 (2007) ............................. 12

<u>L.G. v. Fair Lawn Bd. of Educ.</u>,
2011 U.S. Dist. LEXIS 69232 (3d Cir.) ....................... 35

<u>L.M. by H.M. and E.M. v. Evesham Twp. Bd. of Educ.</u>,
256 F.Supp.2d 290 (D.N.J. 2003) ............................. 10

<u>Lascari v. Board of Educ. of Ramapo Indian Hills Regional High
  School Dist.</u>, 116 N.J. 30 (1989) ........................... 12

<u>N.B. v. Hellgate Elem. Sch. Dist.</u>,
541 F.3d 1202 (9th Cir. 2008) ................................. 32

Oberti v. Clementon Bd. of Educ., 995 F.2d 1204 (3d Cir. 1993) 13

Orsen, Inc. v. Miramax Film Corp., 79 F.3d 1358 (3d Cir.1996).. 7

P.K. and T.K. o/b/o S.K. v. New York City Dept. of Educ.,
819 F. Supp. 2d 90 (E.D.N.Y. 2011).............................. 8

P.V. v. Sch. Dist. of Phila., 2013 WL 618540 (E.D.Pa.)........ 31

R.D. and A.D. for C.D. v. Delran Board of Education,
OAL Dkt. No. EDS 8594-99 (2001)................................ 13

R.E. v. New York City Dept. of Educ.,
694 F.3d 167 (2d Cir. 2012).................................... 7

Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.,
172 F.3d 238 (3d Cir. 1999).................................... 12

Rodrigues v. Fort Lee Bd. of Educ.,
2011 WL 486151 (D.N.J.).................................... 17, 18

S.H. v. State-Operated Sch. Dist. of Newark,
336 F.3d 260 (3d Cir. 2003)................................. 9, 13

Sch. Bd. of the City of Norfolk v. Daphne Brown,
769 F.Supp.2d 928 (E.D.Va. 2010).............................. 24

Shelton v. Maya Angelou Pub. Charter Sch.,
578 F. Supp. 2d 83 (D.D.C. 2008).............................. 23

Shore Reg'l High Sch. Bd. of Educ. v. P.S.,
381 F.3d 194 (3d Cir. 2004)............................... 10, 14

Sinan L. v. Sch. Dist. of Phila.,
2007 WL 1933021 (E.D.Pa. 2007)................................ 17

Wall by Wall v. Mattituck-Cutchogue Sch. Dist.,
945 F. Supp. 501 (E.D.N.Y. 1996).............................. 8

**STATUTES**

20 U.S.C. §1412(a)(1).......................................... 11
20 U.S.C. §1414(b)(3).......................................... 28
20 U.S.C. §1414(c)............................................. 30
20 U.S.C. §1415(b)(6)(B).................................... 29,32
20 U.S.C. §1415(f)(3)(B).................................... 27, 28
20 U.S.C. §1415(f)(3)(E)(ii)................................... 34

20 U.S.C. §1415(i)(2)(C)........................................ 8
20 U.S.C. §1415(k)(1)(E)........................................ 24
20 U.S.C. §1415(k)(1)(F)(i).................................... 23

## **REGULATIONS**

N.J.A.C. 6A:14-2.3........................................ 31,35
N.J.A.C. 6A:14-2.8........................................ 23
N.J.A.C. 6A:14-3.7........................................ 17,22
N.J.A.C. 6A:14-3.8........................................ 29,30

## PRELIMINARY STATEMENT

This dispute arose under the Individuals with Disabilities Education Act ("IDEA") during the 2011-2012 school year regarding special education programming for T.C. At that time, T.C. was a twelfth grade student in the Mount Olive Township Board of Education ("Board" or "Defendant"), determined to be eligible for special education and related services under the category of autistic. T.C. had attended school in Mount Olive since 2007, after a period of having been home-schooled by D.C. for years. T.C. attended high school, primarily in general education classes with related services and supports, in the Mount Olive Township Public School District ("District"). D.C. requested emergent relief, which was resolved via settlement on the day of the hearing. She also requested due process seeking evaluations and out of district placement for T.C. Plaintiff later amended her Petition for Due Process to challenge T.C.'s graduation, scheduled for June 21, 2012. Following a three-day due process hearing, after thoughtfully considering all of the evidence submitted, the Honorable Mumtaz Bari-Brown, the Administrative Law Judge assigned to this matter (hereinafter "the ALJ") rendered a final decision concluding that the Board had offered T.C. a free appropriate public education (FAPE) and that T.C. had met criteria to be graduated as scheduled. That decision should be affirmed.

## PROCEDURAL HISTORY

A full due process hearing was conducted at the Office of Administrative Law ("OAL") in three days on May 29, 2012, June 4 and June 11, 2012.

In a final decision dated June 15, 2012, the ALJ correctly decided that the Mount Olive Township Board of Education had offered T.C. FAPE and had met the requirements for graduation from high school as scheduled in June of 2012, and consequently denied the Plaintiffs' Amended Petition for Due Process. The instant action is an appeal by the Plaintiffs of that administrative decision.

On February 27, 2013, the Honorable Patty Shwartz, then a U.S. Magistrate Judge, conducted a conference with the parties to address Plaintiffs' request for discovery and set a schedule for Plaintiffs' filing of the instant Motion for Summary Judgment to decide this appeal. Thereafter, the Honorable Cathy L. Waldor was assigned as the Magistrate to this matter.

Plaintiffs filed a Motion for Summary Judgment on May 3, 2013, seeking multiple forms of relief. Defendant opposes that motion herein and requests that this Court deny same, thus upholding the ALJ's decision as being correct as a matter of fact and law, dismissing all claims raised in Plaintiffs' complaint and denying the requested relief in its entirety.

**STATEMENT OF FACTS**

Due to space constraints, the Court is respectfully referred to Defendant's Response to Plaintiffs' Local Rule 56.1 Statement of Facts submitted herewith for the factual contentions contained therein. Plaintiffs, however, inappropriately included additional factual contentions in this section of their brief. Many overlap with the Statement of Undisputed Facts. For those, we rely upon our Response. To the extent that this section contains new contentions from Plaintiffs, Defendant responds as follows:

Defendant denies that T.C. was forcibly graduated from high school in June of 2012, as he participated in graduation in accordance with the ALJ's decision. Defendant denies that T.C.'s behavior was increasingly erratic or that it would have needed to conduct a Functional Behavioral Assessment of T.C. for any reason during the 2011-2012 school year. Defendant denies that occupational therapy services were removed from T.C.'s IEP at the District's initiation and further denies that this was a crucial related service. Defendant denies that it had not evaluated T.C.'s occupational therapy needs since 2007 and further denies that any of Plaintiffs' offered citations establish this contention.

Defendant denies that it offered T.C. "few services" or that it "gravely mishandled" same. Defendant denies any impropriety in the sensory diet offered to T.C. Defendant admits that T.C.'s occupational therapist noted that he benefited from the use of a

sensory diet. Defendant denies that this service was discontinued for T.C. in 2009. Defendant denies that Plaintiffs' citations establish this contention.

Defendant admits that D.C. expressed her desire for T.C. to have access to exercise equipment at two IEP meetings, as documented in R-2 and R-5. Defendant denies that this constituted any sort of request to which a response from the District was required. Defendant denies that evidence was offered in the hearing below to establish this contention. Defendant admits that the District moved the exercise equipment used by T.C. to a new location. Defendant admits that T.C. did not want to use the equipment in the new location. Defendant denies the remainder of Plaintiffs' contentions raised in regard to this issue, and denies that Plaintiffs' citations establish these as fact. Defendant denies that it did not provide an alternative to address T.C.'s movement needs or that Plaintiffs' citations establish same. Defendant denies requiring T.C. to share an aide with another student. Defendant denies refusing to move T.C.'s locker and notes that Plaintiffs acknowledge that the locker was moved in its Amended Petition at p. 6 and Post-Hearing submission at p. 9.

Defendant denies that it mishandled T.C.'s needs. Defendant denies that T.C. regressed academically, behaviorally and emotionally while attending school in-district. Defendant notes that Plaintiffs include no citation to the record below and denies that evidence was offered at the hearing to establish any of these contentions; quite

to the contrary, testimony from one of Plaintiffs' experts established that T.C. would not be expected to score in the same manner on standardized testing across years, given his cognitive functioning. (T-6/11/12, 109:1-5).

Defendant denies that its experts agreed that there was a significant regression in T.C.'s standardized test results. Defendant denies that Plaintiffs established any "disconcerting regression" for T.C. in the record below.

Defendant admits that T.C.'s program for the 2011-2012 school year placed him in general education classes for 80% of his school day. Defendant denies failing to address T.C.'s sound sensitivity or exposing him to anything without coping mechanisms. Defendant denies any failure to evaluate T.C. or appropriately provide him with services. Defendant denies that T.C.'s behavioral needs increased. Defendant notes that Plaintiffs do not refer to the record below in making these contentions and denies that evidence was offered at the hearing that would establish these as fact.

Defendant denies that it failed to consider relevant records for T.C. in conducting the Manifestation Determination meeting. Defendant denies that any evidence was offered at the hearing below to support this contention. Defendant denies that D.C. provided the psychiatric note clearing T.C. to return to school until after she requested emergent relief, seeking his return. Defendant denies that T.C. showed signs of emotional distress when he returned to school, and

notes that Plaintiffs included no citation to the record in support of this. Defendant denies that T.C. evidenced an academic regression. Defendant denies that T.C. had not received any transition services. Defendant denies that Plaintiffs' citation in this regard establishes any of these contentions as fact.

Defendant admits that D.C. filed an Amended Petition for Due Process, albeit on May 9, 2012, not on April 10, 2012, as Plaintiffs claimed. That pleading speaks for itself. Defendant admits that a due process hearing was held before Judge Bari-Brown. Defendant denies that Plaintiffs presented substantial expert testimony regarding T.C.'s continuing academic and emotional needs. Defendant denies that at the hearing, District personnel demonstrated how little they knew of T.C.'s needs and services. Defendant denies Plaintiffs' characterization of the ALJ's decision, and submits that it speaks for itself.

## LEGAL ARGUMENT

### POINT I

#### PLAINTIFFS ARE NOT ENTITLED TO SUMMARY JUDGMENT

Summary judgment is the most pragmatic procedural mechanism in the Federal Rules for resolving appeal actions under the IDEA. Summary judgment motions in the United States Federal District Courts are governed by Fed. R. Civ. P. 56(c), which provides that summary judgment should be granted:

> if the pleadings, the discovery and
> disclosure materials on file, and any
> affidavits show that there is no genuine
> issue as to any material fact and that the
> movant is entitled to judgment as a matter
> of law

Fed. R. Civ. P. 56(c)(2).

Generally, summary judgment is available when a party demonstrates that there are no genuine issues of material facts and the evidence establishes an entitlement to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Orsen, Inc. v. Miramax Film Corp., 79 F.3d 1358 (3d Cir.1996).

To defeat a Motion for Summary Judgment, Rule 56(c) requires "the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986), cert. denied, 484 U.S. 1066 (1988).

For IDEA appeals, other Circuits have used summary judgment motions as to efficiently review administrative decisions, and have not restricted the focus to discerning whether disputed issues of fact exist. R.E. v. New York City Dept. of Educ., 694 F.3d 167 (2d Cir. 2012). In doing this, the Court looks to whether the administrative record, in conjunction with any

additional evidence submitted to the court, establishes that decisions made were in compliance with the requirements of IDEA. P.K. and T.K. o/b/o S.K. v. New York City Dept. of Educ., 819 F. Supp. 2d 90 (E.D.N.Y. 2011); Wall by Wall v. Mattituck-Cutchogue Sch. Dist., 945 F. Supp. 501, 508 (E.D.N.Y. 1996).

Using either method of analysis, Plaintiffs are not entitled to summary judgment. There are multiple issues of material fact in dispute and Plaintiffs have not demonstrated in any way that they are entitled to prevail as a matter of law on their motion. Additionally, the administrative record more than supports that the ALJ's decision was made in compliance with the requirements of IDEA.

For the reasons set forth more fully herein, the Board respectfully requests that Plaintiffs' motion for summary judgment be denied, thus affirming the ALJ's decision and dismissing Plaintiffs' Complaint in its entirety, with prejudice.

## POINT II

### STANDARD OF REVIEW

In an appeal of an impartial due process hearing, the United States District Court is charged with reviewing the record of the administrative proceedings, hearing additional evidence when appropriate, and basing its decision upon a preponderance of the evidence. 20 U.S.C. §1415(i)(2)(C). In

reviewing the administrative decision, the IDEA requires that 'due weight' be given to the ALJ's ruling. Bd. of Educ. of the Hendrick Hudson Cent. Sch. Dist. v. Rowley, 458 U.S. 176, 205-06, 102 S.Ct. 3034, (1982); Carlisle Area Sch. v. Scott P., 62 F.3d 520, 529 (3d Cir. 1995); D.B. v. Ocean Twp. Bd. of Educ., 985 F. Supp. 457, 500 (D.N.J. 1997).

Under the "due weight" standard, established by the United States Supreme Court in Rowley, the reviewing court has plenary review over questions of law. However, the reviewing court is also obliged to provide analysis and reasons that form the basis of the reviewing court's decision. S.H. v. State-Operated Sch. Dist. of Newark, 336 F.3d 260 (3d Cir. 2003).

The reviewing court is not required to accept the factual findings from the administrative proceedings. However, those factual findings may not just be rejected outright by the District Court without justification. They

> are to be considered *prima facie* correct, and if a reviewing court fails to adhere to them, it is obliged to explain why. In addition, if a state administrative agency has heard live testimony and has found the testimony of one witness to be more worthy of belief than the contradictory testimony of another witness, that determination is due special weight…This means that a District Court must accept the state agency's credibility determinations unless the non-testimonial, extrinsic evidence in the record would *justify* a contrary conclusion.

Shore Reg'l High Sch. Bd. of Educ. v. P.S., 381 F.3d 194, 199 (3d Cir. 2004). See also L.M. by H.M. and E.M. v. Evesham Twp. Bd. of Educ., 256 F.Supp.2d 290 (D.N.J. 2003).

In applying the requisite due weight standard to this appeal, ample evidence in the record supports the correctness of the ALJ's decision. The ineluctable conclusion following such review is that Plaintiffs are not entitled to Summary Judgment in this matter and the ALJ's decision should be affirmed.

## POINT III

**PLAINTIFFS INCORRECTLY CONTEND THAT MOUNT OLIVE VIOLATED T.C.'s RIGHT TO A FREE APPROPRIATE PUBLIC EDUCATION**

The ALJ correctly concluded based upon the credible evidence presented following the due process hearing conducted in this matter that the Board had offered T.C. a free appropriate public education. Plaintiffs claim through this motion that the Board committed procedural and substantive violations of IDEA which denied T.C. FAPE. Plaintiffs include a list of violations, without any citation to the record, some of which were not raised at the hearing. Those will be addressed in a separate point. Plaintiffs claim these violations are based upon undisputed facts and entitle them to relief. Plaintiffs go so far as to contend that numerous procedural violations will likely result in a denial of FAPE. The case they cite for this proposition, however, is nothing more than a decision determining a pleading to be sufficient in denying a motion to

dismiss. <u>Brown v. Sch. Dist. of Phila.</u>, 2012 WL 3064022 (E.D. Pa. 2012). As such, Plaintiffs' reliance upon it for substantive content is misplaced. Quite simply, Plaintiffs' arguments regarding the numerous violations made by the Board are inaccurate and unsupported by the record in this matter.

The IDEA requires that any student who is eligible for special education and related services be provided with a free appropriate public education. 20 U.S.C. §1412(a)(1). While Congress did not define "appropriate public education," the United States Supreme Court has interpreted it to mean an education that is "reasonably calculated to provide meaningful educational benefit to the individual child." <u>Rowley</u>, <u>supra</u> at 192. The Act does not require school districts to maximize the potential for students but does require a "basic floor" of opportunity which consists of "access to specialized instruction and related services" individually designed for each child. <u>Id.</u> at 197-201 (rejecting the lower court's holding that the Act requires States to maximize a student's potential). Accordingly, an appropriate education differs from student to student depending on a myriad of facts affecting the student's ability to assimilate information. <u>Ibid</u> at 198.

In determining whether an appropriate public education confers meaningful educational benefit to the individual child in question, the educational benefits provided to the child must

be more than *de minimis*. Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.*,* 172 F.3d 238, 247 (3d Cir. 1999). A district must provide a child an education that will offer an opportunity for significant learning taking into account the child's potential. Id.

The Third Circuit has likewise interpreted this "basic floor" as an education offering the opportunity for meaningful learning while accounting for each child's potential.   Id. Importantly, however, a "meaningful" education must "provide 'more than a trivial educational benefit.'" Ibid. (quoting Polk v. Central Susquehanna Intermediate Unit 16, 853 F.2d 171, 182 (3d Cir. 1988)). In that matter, the Court concluded that a satisfactory IEP requires "significant learning" and must confer "meaningful benefit," which is "gauged in relation to [each] child's potential." Ibid.

New Jersey adopted the standards set forth by the U.S. Supreme Court and the Third Circuit in Lascari v. Board of Educ. of Ramapo Indian Hills Regional High School Dist., 116 N.J. 30, 47–48 (1989) (noting that Districts are not required to provide the "best" education available).   See also K.G. and J.G. o/b/o O.G. v. Morris Board of Ed., OAL Dkt. No. EDS 11872-06 (2007) (explaining that districts are not required to provide their special education students "with an education beyond a meaningful 'benefit'"); R.D. and A.D. for C.D. v. Delran Board

of Education, OAL Dkt. No. EDS 8594-99 (2001) (noting the same). Consequently, if an IEP is reasonably calculated to provide more than a *de minimus* benefit, then the school district has met its obligations under IDEA.  C.J. and D.J. o/b/o B.J. v. Ocean City Board of Education, OAL Dkt. No. EDS 6499-02 (2004).

As noted above, in determining whether learning is "meaningful," an analysis is required to compare the benefits with the child's potential and specific challenges. In Rowley, the Court utilized Congress' emphasis on a disabled child's achievement to a "reasonable degree of self-sufficiency" as a measure of whether an IEP offered an appropriate education. Rowley, supra, 458 U.S. at 201. See also Oberti v. Clementon Bd. of Educ., 995 F.2d 1204 (3d Cir. 1993) (stressing Congress' recognition of the importance of teaching skills that foster independence).  Whether those goals are reasonably calculated to provide a benefit for the student in the first instance can be determined by ascertaining the process through which they were developed and whether achievement of the goals will assist the student in their day to day activities, both now and in the future.

The issue of whether an IEP is appropriate is a question of fact. S.H., supra at 271 (citing Carlisle Area Sch., supra at 526). Thus, the ALJ's determination that the District offered T.C. a free appropriate public education is a fact, which under

the relevant standard of review is to be considered *prima facie* correct. <u>Shore Reg'l</u>, <u>supra</u> at 199.

In the instant case, the ALJ correctly decided that the Defendant offered T.C. a free appropriate public education through IEPs which conferred meaningful educational benefit upon him, as evidenced by his progress noted in his pupil records and his grades. <u>See</u>, e.g. R-2; R-5; R-6; R-11. Additionally, the ALJ correctly found that T.C. had met the agreed-upon graduation criteria contained in his IEPs and was appropriately graduated, as scheduled, on June 21, 2012. <u>Id</u>. The record in this matter fully supports the ALJ's determinations. Plaintiffs offer no legally sustainable argument as to why the ALJ's findings should be overturned.

Michael Iannucci, Director of Special Education, was accepted as an expert in Supervision, Special Services and Administration. (T-5/29/12, 25:19-24). T.C. was on an academic track in which he was expected to graduate in four years. (P-41, P-42, P-1, R-2, R-5, R-6). Mr. Iannucci testified that there is no expectation within the District that students with disabilities will graduate in four years and that the determination is made on an individual basis. (T-5/29/12, 27:18-25). Through his testimony, Mr. Iannucci stressed that grades are not just given out in the District; rather academic grades reflect student proficiency in a given area. (T-5/29/12, 30:10-

31:17). In T.C.'s case, Mr. Iannucci testified that T.C.'s grades demonstrated sufficient proficiency for graduation, as he obtained all As and Bs on his final report cards. (Id. at 33:5-13; R-11).

Sharon Staszak, Instructional Supervisor of Special Services, was accepted as an expert in Supervision, Transition Services and Instruction of students with special needs. (T-5/29/12, 52:19-53:1). Ms. Staszak highlighted the individualized aspects of T.C.'s programming, the transition activities in which he participated, how he performed with them and his social, behavioral and academic functioning. (T-5/29/12, 57:23-58:1). She offered her expert opinion that T.C. had been provided a free appropriate public education by the District and had been appropriately prepared to transition. Id. at 89:23-90:10.

Additionally, Ms. Staszak testified that she was very familiar with T.C. as she provided him with individualized math instruction during the ESY of 2009. (T-5/29/12, 54:15-17). Ms. Staszak confirmed that this support was unique—one that was offered to very few students. Id. at 55:13-15. Ms. Staszak testified that T.C. performed very well during that transitional summer and liked working with the kindergarten class as a helper. Id. at 64:23-65:6. This is in direct opposition to Plaintiffs' argument that the District improperly placed T.C.

with young students given his sensory sensitivities. Plaintiffs did not, however, introduce any evidence at the hearing to establish that this was problematic for T.C. in any way.

Plaintiffs contend the transition plan for T.C. was inappropriate and as a result, could not have created appropriate and measurable postsecondary goals for him. This argument is without merit. A transition plan was included in all of the IEPs developed for T.C.'s high school years. (P-41, P-42, R-2, R-5 and R-6). That plan included a course of study designed to advance T.C.'s goal of attending college and referrals to appropriate agencies. Id. Ms. Staszak testified that from the outset of transition planning for T.C., D.C. wanted him placed on academic track with college as the goal. Id. at 68:6-22. T.C.'s ninth grade IEP indicates that his post-secondary goal was to attend college and ultimately work in computer animation. (P-42). In accordance with this plan, that IEP included a four-year academic plan, which was projected to be delivered through a combination of general education and Resource Center classes. Furthermore, without objection from D.C., the IEP team continued T.C. on this track for the entirety of his high school career. (P-1, R-2, R-5 and R-6). Furthermore, Ms. Staszak testified that T.C. was referred to the appropriate agencies to assist with transition, namely the Division of Developmental Disabilities and the Division of Vocational Rehabilitation Services, with

whom T.C. met recently. (T-5/29/12, 77:17-79:19). Ms. Staszak further testified that D.C. had met with a guidance counselor to discuss colleges with special programs that might be options for T.C. Id. at 69:12-15. This directly contradicts Plaintiffs' allegation that the District provided no information to assist T.C. in obtaining his postsecondary goals.

The ALJ found that the District had appropriately prepared transition plans for T.C. in accordance with N.J.A.C. 6A:14-3.7(d). Plaintiffs have not pointed to any non-testimonial evidence to support a conclusion to the contrary. Moreover, even assuming *arguendo* that the transition plan was not updated as Plaintiffs might have liked, that would not amount to any actionable claim under IDEA. The Third Circuit has held that a transition plan containing large blanks was not a violation of the IDEA for which relief was available. Rodrigues v. Fort Lee Bd. of Educ., 2011 WL 486151 (D.N.J.)(citing Sinan L. v. Sch. Dist. of Phila., 2008 WL 4335936 (3d Cir. 2008)). The district court in the Sinan L. matter adopted "the Seventh Circuit's assertion that 'a school district's failure to include a transition plan in an IEP is a mere procedural flaw and does not violate any substantive rights.'" Sinan L. v. Sch. Dist. of Phila., 2007 WL 1933021 (E.D.Pa. 2007)(citing Bd. of Educ. of Twp. High Sch. Dist. No. 211 v. Ross, 2007 WL 1374919 (7th Cir. 2007)). The case cited by Plaintiffs to support their contention

to the contrary is not from the Third Circuit and is older than the Rodrigues decision. Dracut Sch. Comm. V. Bureau of Spec. Educ. App. Of the Mass. Dep't of Elem. and Secondary Educ., 737 F.Supp.2d 35 (D. Mass. 2010). As such, Plaintiffs' arguments about the transition plan, must be disregarded, as it does not reflect the current status of the law in the Third Circuit.

Without objection by D.C., the graduation criteria were set, exempting T.C. from passing the HSPA, but requiring him to fulfill all other requirements. Id. Ms. Staszak testified that T.C. met those criteria. (T-5/29/12, 90:3-7). Plaintiffs contend T.C. did not have appropriate postsecondary goals and objectives. This argument cannot prevail, however, as the Third Circuit has held that the complete absence of goals and objectives from an IEP is a procedural error for which no relief is available through IDEA. G.N. v. Bd. of Educ. of Livingston, 309 Fed. Appx. 542 (3d Cir. 2009).

Ms. Staszak testified that T.C. was very good with self-advocacy skills. (T-5/29/12, 74:5-6). Accordingly, T.C. demonstrated progress, since self-advocacy was a specific target of the ABA therapy provided to him in ninth grade. (P-42). She further noted that he self-monitors his behavior, regulates his ability to learn by taking breaks as needed, gets along and works well with others. When he becomes frustrated, she stated that T.C. knows that he can leave class and go for a walk either

on the treadmill or in the hallways. (T-5/29/12, 75:24-77:7). She also indicated that he knows he can always speak with his case manager. Id. Moreover, T.C.'s IEPs record that he has participated in numerous community activities, which provided T.C. with a meaningful opportunity to grow and interact with others outside of a school environment; skills which are vital to post-secondary life. (P-42, R-2, R-5, R-6).

The Board also presented the testimony of Elizabeth Petersen, who was accepted as an expert in occupational therapy, with over thirty years of experience working with autistic students. (T-5/29/11, 185:14-186:11). Ms. Petersen testified that the sensory diet used with T.C. consisted of assorted activities throughout the day designed to both provide T.C. with a routine and physical activities to help him cope with his sensory sensitivities and modulate his behavior. She testified that she has offered ongoing consultation to T.C.'s aide regarding any revisions that might be needed to his sensory diet to meet his needs, and asserted that the diet had a positive impact on T.C., making him more comfortable throughout the day. Id. at 191:21-192:14. Despite Plaintiffs' assertion to the contrary, T.C. had a sensory diet in place the entire time he attended school in-district. Id. at 192:15-193:2. This testimony

likewise undercuts Plaintiffs' argument that the sensory diet was removed from his program.[1]

Furthermore, despite Plaintiffs' repeated contentions that the District did not appropriately program for T.C.'s alleged sound sensitivities, Ms. Peterson testified that throughout all her observations of T.C. she never noticed him reacting negatively to loud noise. (T-5/29/12, 197:20-24). Notably, Ms. Petersen testified that she consistently worked on T.C.'s auditory sensitivity, even giving T.C. audiotapes of a baby crying. Though Petitioner maintains this is a significant sensitivity for T.C., he exhibited no adverse reaction when listening to the tape. Id. at 196:20-197:17.

Ms. Petersen testified in her expert opinion that T.C. has sensory needs and will continue to need to take action to self-regulate based upon sensory input. As such, she opined that T.C. continues to require use of a sensory diet. However, she affirmed, in her expert opinion, that T.C. no longer required direct occupational therapy to access his educational program. (T-5/29/12, 209:19-210:7).

In reviewing the IEPs offered to T.C. over the years he has been educated in-district and hearing the testimony of the

---

[1] The claim about the sensory diet being removed from T.C.'s program was not raised in the Amended Petition or the proceedings below and is time-barred pursuant to 20 U.S.C.§1415(b)(6)(B). Moreover, even assuming Plaintiffs could pursue this claim now, they provide no factual support in the record to establish that the sensory diet was stopped for T.C. and no legal support for their conclusion that had it been stopped, T.C. would have been denied FAPE.

District's witnesses, it is clear that the District tailored T.C.'s programming to meet his educational needs and allow him an opportunity to progress in his areas of disability. (ALJ decision at 25; P-41, P-42, R-2, R-5, R-6). The benefits of that programming for T.C. are obvious as well. T.C. began his education in a self-contained school for children on the autistic spectrum. (ALJ decision at 13) He has now graduated from high school, pursuant to the ALJ's ruling in the hearing below, having completed an academic course of study in general education with some Resource Center classes, which Ms. Staszak testified was appropriate to prepare him to transition to college, which was the stated post-secondary goal in the IEP. Id. at 24-29. The testimony and documentary evidence establish that despite Plaintiffs' belief otherwise, T.C. was extremely successful in high school, consistently achieving honor roll status and earning all As and Bs for his final grades. (R-11). This far exceeds the requirements of FAPE set forth in Rowley, supra.

In addition to the grades, T.C. has developed excellent self-advocacy skills, learned how to monitor his own internal state and will take steps to regulate himself if needed. He is independent with his daily living and hygiene skills, gets along well with his peers, can negotiate his environment well, takes steps to minimize his exposure to stimuli that he finds noxious

and has had very few isolated behavioral incidents in his time in-district. (T-5/29/12, 53:22-54:7).

Far from the declining behavioral functioning Plaintiffs urge this Court, without support, to conclude T.C. exhibited, Ms. Staszak testified that T.C. had been involved in three behavioral incidents total during his high school years, which did not exhibit any sort of a pattern. (T-5/29/12,61:15-62:2). Admittedly, D.C. requested the completion of a Functional Behavior Assessment (FBA) of T.C. (P-17). Ms. Staszak testified that the case manager had called D.C. and told her one was not needed at that time since T.C.'s behavior was not impeding his progress on a regular basis. (T-5/29/12, 125:17-20). Indeed, though Plaintiffs urge otherwise, Ms. Staszak opined that in no way was a Functional Behavior Assessment warranted for T.C. Id. at 58:2-59:12.

While certainly, the District is obligated to consider behavioral needs of students in developing IEPs, that does not entitle every student to the completion of an FBA as Plaintiffs suggest. See N.J.A.C. 6A:14-3.7(c)4. Plaintiffs contend an FBA was required of T.C. due to his "worsening behaviors." Even Plaintiffs' own expert wrote that any behavioral issues with T.C. were infrequent. (P-16, p. 8). Also, Ms. Staszak testified that T.C. had three behavioral incidents in high school. (T-5/29/12, 61:15-62:2). This would not qualify as a pattern of

serious behaviors, as Plaintiffs maintain. An FBA was not warranted to explore these few behavioral issues, which were isolated in nature.

Plaintiffs also assert that a district must conduct an FBA following a disciplinary incident when the behavior is determined not to be a manifestation of the child's disability. This is directly contradictory to the requirements of IDEA that an FBA be conducted following a disciplinary incident when the behavior <u>is</u> found to be a manifestation of the student's disability. 20 U.S.C. §1415(k)(1)(F)(i).

A suspension of over 10 days is considered a change in placement. <u>N.J.A.C.</u> 6A:14-2.8(c). However, a school may suspend a student with disabilities for longer than 10 days in the same manner as a student without disabilities when the behavior giving rise to the discipline is determined not to be a manifestation of his disability. <u>Shelton v. Maya Angelou Pub. Charter Sch.</u>, 578 F. Supp. 2d 83 (D.D.C. 2008).

In this matter, the District convened a Manifestation Determination meeting for T.C. prior to the expiration of the 10 day period. (P-29). At that meeting, it was determined that the behavior for which T.C. was suspended was not a manifestation of his disability. <u>Id</u>. Accordingly, the District continued his suspension pending psychiatric clearance. <u>Id</u>.

In their Motion, to bolster their contention that T.C. was denied FAPE, Plaintiffs make much ado about the Manifestation Determination meeting. Plaintiffs argue, without citation to the record below, that D.C. was not notified of this meeting and as a result, she was prevented from participating in decision-making for T.C. Admittedly, the IDEA contemplates the parent as a participant in a Manifestation Determination meeting. 20 U.S.C. §1415(k)(1)(E). The record below, however, establishes that D.C. was phoned about the meeting, which was scheduled at a time convenient for her, though no written notice of the meeting was sent prior to it occurring. (T-5/29/12,174:25-175:14). Also, D.C. was sent a copy of the results of that meeting. (P-28). Plaintiffs did not present any evidence that D.C. requested another meeting or that the District denied her participation in the process in any way.

Plaintiffs claim that D.C.'s lack of participation in the meeting alone constitutes a deprivation of FAPE. The case cited in support of this contention is inapposite, however, as in that case, the Court found a violation when the district affirmatively misrepresented the purpose of the meeting to the parent and failed to consider the results of a psychiatric evaluation obtained after the disciplinary matter had occurred. Sch. Bd. of the City of Norfolk v. Daphne Brown, 769 F.Supp.2d 928 (E.D.Va. 2010). In the instant matter, there is no evidence

in the record for this matter that would substantiate a finding that D.C. was told the wrong reason for the meeting. Additionally, D.C. did not obtain a note from a psychiatrist for approximately one and a half months following T.C.'s suspension. (P-26). Accordingly, the Team would not have had that document available to consider at the Manifestation Determination meeting. As such, Plaintiffs' argument must fail.

Plaintiffs contend, again without citation to the record, that the results of the Manifestation Determination meeting were faulty and that T.C. was completely deprived of education for over two months as a result. None of this was established at the hearing below. Moreover, Ms. Staszak testified that had D.C. provided psychiatric clearance of T.C.'s ability to return to school the day after his suspension, he would have been allowed to resume attendance; however, D.C. informed the District that she would not take him for the assessment and failed to do so for a month and a half afterward. (T-5/29/12, 82:13-84:2).

Additionally, Ms. Staszak testified that the District encountered difficulty in providing services to T.C. in this time period, as a result of restrictions imposed by D.C. Id. at 84:19-85:15. She also discussed the supports provided to T.C. upon his return to school that helped him become current in his work. Id. at 85:19-86:2. Accordingly, there is nothing in the

record to establish Plaintiffs' contention that T.C. was deprived of FAPE during this time period.

Plaintiffs also inappropriately attempt to connect T.C.'s sensory sensitivity to the isolated behavioral incidents in which he was involved, without reference to the record below. Additionally, Plaintiffs imply, without foundation, that T.C.'s behavior warranted police intervention, when the District actually phoned the police over concerns for T.C.'s physical safety the two times he left the school area.

Plaintiffs also incorrectly refer to the District failing to provide "compulsory" evaluations of T.C. (Plaintiffs' Brief at 12). While those are not specified anywhere, the most recent evaluation plan for T.C. contains D.C.'s signed agreement with same. (R-1). No options were considered and rejected, so it is unclear what evaluation the District did not complete that Plaintiffs urge this Court to consider as "compulsory" now. Regardless, there is no basis for such request.

**POINT IV**

**PLAINTIFFS' ARGUMENTS THAT WERE NOT RAISED IN THE DUE PROCESS PETITION SHOULD NOT BE CONSIDERED BY THIS COURT**

Plaintiffs argue in their brief that T.C. was not evaluated properly by the District and that D.C.'s ability to participate in the decision-making process for T.C.'s education was impaired. They contend that as a result, T.C. was denied FAPE,

and go so far as to claim that the District's alleged exclusion of D.C. from the decision making process establishes an automatic denial of FAPE. Importantly, other than allegations about the District failing to conduct an FBA of T.C. as described above, these claims were not raised in the Amended Petition below. As such, to the extent they were not raised, Plaintiffs are barred from doing so now.

D.C. did not even include a global statement in her Amended Petition that the Board had impeded her participation in T.C.'s education, nor did Plaintiffs allege that T.C. had been deprived of his right to a free appropriate public education as a result. Plaintiffs further did not introduce any testimony or documentation regarding the impact of the alleged violations on D.C. to potentially substantiate their claimed deprivation and requested relief. Instead, they raise this issue for the first time in this Motion.

Under these circumstances, the IDEA prohibits consideration of these arguments. The IDEA provides that "[t]he party requesting the due process hearing <u>shall not</u> be allowed to raise issues at the due process hearing that were not raised in the [request for due process], unless the other party agrees otherwise." 20 U.S.C. §1415 (f)(3)(B)(emphasis added). The plain language of Plaintiffs' Amended Petition reveals that no notice was provided to the Board of the alleged improper evaluations of

T.C. and procedural deficiencies. The Board was not asked to agree that these claims could be made part of the administrative proceedings, and accordingly never consented to Plaintiffs pursuing these issues.

Pursuant to the limitations imposed by IDEA on the conduct of due process hearings, Plaintiffs' contentions regarding these procedural violations would not have been proper, if pursued in the due process hearing at OAL, and should not be considered in these proceedings. 20 U.S.C. §1415(f)(3)(B). See also A.Z. v. Mahwah Twp. Bd. of Educ., 2006 U.S. Dist. LEXIS 22305 (D.N.J.) (the reviewing Court cannot set aside a decision in a special education matter on the basis of an argument not raised before the ALJ).

Even assuming, *arguendo*, that Your Honor opts to consider Plaintiffs' argument regarding the alleged improper evaluations and procedural violations, there is no merit to same.

Plaintiffs' claim regarding T.C.'s evaluations is improper in its entirety. Plaintiffs misstate the requirements for reevaluations of students and attempt to impose the same requirements for initial evaluations on them. The IDEA sets forth requirements for initial evaluations in 20 U.S.C. §1414(b)(3), including that the student must be evaluated in all areas of suspected disability. While T.C. was evaluated by the Board's Child Study Team (CST), the District did not perform his initial

evaluation. T.C. had been classified by a prior district beginning at the age of three, long before being evaluated by the District. (R-3). Moreover, the first evaluation of T.C. by the District occurred in 2007, well outside the statute of limitations period contained in IDEA. 20 U.S.C. §1415(b)(6)(B). As such, any complaints regarding those evaluations are time-barred and thus, improperly raised by Plaintiffs at this juncture.

Plaintiffs incorrectly state that the District's reevaluation was deficient because it did not assess him in all areas previously evaluated. For reevaluations, the New Jersey Administrative Code requires Districts to meet with parents at least every three years to review all available information and determine what data, if any, is required to establish the student's continued eligibility for special education and related services, present levels of performance and programming needs. N.J.A.C. 6A:14-3.8. There is no requirement in the Code to conduct assessments in all areas each time for each student. Id. Moreover, the District had ongoing data about T.C.'s functional abilities in school, as well as agreed-upon reevaluations conducted of him. (R-2–R-6; R-11; R-13). This information was shared with D.C. at each IEP meeting. (P-40; P-41; P-42; P-1; R-2; R-5; R-6). Her ability to participate in the decision making process for T.C. was not impeded in any way. No

testimony or documentary evidence was offered to support these contentions. Thus, Plaintiffs' argument that that it would be impossible for the District to have data necessary to create an appropriate IEP is completely without merit.

The requirements for a reevaluation do not contain the same requirement to assess a student in all areas of disability, nor do they support Plaintiffs' contention that the District is obligated to reevaluate a child in each area of disability every three years. 20 U.S.C. §1414(c). Quite to the contrary, the inquiry for the reevaluation is whether the data indicate that the student continues to have a disability and the parties are permitted to waive a reevaluation entirely, when the agency and parent agree that none is required. Id.; N.J.A.C. 6A:14-3.8(b)3. Thus, Plaintiffs' statement that the District was required to assess T.C. in all areas at every reevaluation is incorrect.

Plaintiffs also claim now that the District was required to conduct an occupational therapy reevaluation prior to discontinuing services. In doing so, they argue that discontinuing occupational therapy was a "significant change in placement." While certainly related services are part of programming provided to students, they do not, in and of themselves constitute a placement. Rather, placement means the physical location where the student's program is to be implemented. P.V. v. Sch. Dist. of Phila., 2013 WL 618540

(E.D.Pa.). Thus, the removal of occupational therapy could not constitute a "significant change in placement" as Plaintiffs urge. Accordingly, Plaintiffs' contention is without merit.

Moreover, testimonial evidence was entered by two separate District employees that occupational therapy was only discontinued for T.C. in May of 2011 because D.C. requested it. (T-5/29/12, 98:8-12; 199:22-200:14). Thereafter, the District changed his IEP to remove this service. (R-5). That IEP provided D.C. with written notice of the removal of occupational therapy from T.C.'s educational program. N.J.A.C. 6A:14-2.3. She did not file for mediation or due process within 15 days to stop the implementation of it. Therefore, it went into effect for T.C. with her tacit approval. Id. Plaintiffs offered no credible evidence to establish that D.C. had not been aware of this change, as she claims now. As D.C. attended that IEP meeting and the one after that also did not contain occupational therapy and had copies of those IEPs, this contention is baseless. (R-5).

The majority of the documentation offered by Plaintiffs to support T.C.'s sensitivity to loud noises and D.C.'s concerns about same are much older than two years prior to the filing of the due process request. (P-13; P-14; P-15; P-40; P-42; P-1). As such, Plaintiffs' argument that T.C. should have been evaluated differently in the areas of occupational therapy and sensory integration are time-barred pursuant to 20 U.S.C. §1415

(b)(6)(B)   and   should   not   be   considered   in   this   matter.
Additionally,   Plaintiffs   entered   no   request   from   D.C.   for   this
evaluation   to   be   conducted,   nor   is   there   evidence   in   any   of   the
IEPs   that   D.C.   raised   this   as   a   possibility   or   that   the   District
rejected it.

Plaintiffs   claim   the   District   was   required   to   conduct   a
sensory   evaluation   of   T.C.   because   of   the   sensitivities   reported
by   D.C.   and   evidenced   in   school.   Plaintiffs   liken   the   District's
failure   to   conduct   this   evaluation   to   a   district   failing   to   send
a   preschool   student   to   be   evaluated   for   autism,   when   he   had
entered   the   district   with   a   medical   note   indicating   autistic
tendencies.   N.B. v. Hellgate Elem. Sch. Dist.,   541 F.3d 1202 (9th
Cir. 2008).   That   case   has   no   bearing   on   the   instant   matter,   as
it is distinguishable in all respects.

The   district   in   Hellgate   provided   the   student   with   very
little   programming   during   a   diagnostic   IEP   period,   in   which   it
was   assessing   a   preschool   child.   The   district   there   was   on
notice   that   the   student   had   autistic   tendencies   and   the   Court
held   an   evaluation   in   this   area   to   be   essential   to   properly
determining his educational needs.   Id.

In   this   matter,   while   we   do   not   concede   that   a   sensory
processing   problem   is   nearly   as   pervasive   and   central   to
educational   programming   for   a   student   as   autism   is,   the   record

demonstrates that the District was aware of T.C.'s sensory needs and provided programming for those needs from the time he entered the District in 2007. (T-5/29/12, 186:23-187:23). Plaintiffs introduced no evidence to establish that T.C.'s needs would have been better identified or that it would have changed programming for T.C. had the District obtained an evaluation that produced a formal diagnosis of Sensory Modulation Disorder before Plaintiffs had T.C. evaluated by Dr. Warburg after initiating this action. Instead, the testimony from the Ms. Petersen indicated that the results of the sensory profile she conducted were consistent with her personal observers of T.C. after working with him, thus reinforcing the appropriateness of the interventions used with him by the District. (T-5/29/12, 205:25-206:2).

The District did complete an Occupational Therapy Sensory Status of T.C. in response to Plaintiffs' concerns about his sensory processing. (R-13; T-5/29/13, 203:21-204:2). The citations offered by Plaintiffs to support their claim to the contrary do not establish that no evaluation was done, or that T.C.'s IEP was inappropriate as a result. In contradiction to Plaintiffs' claim that T.C. could not have been provided proper supports, the District had a individualized sensory diet responsive to T.C.'s needs in place for him from the time he

entered the District through the time of the hearing. (T-5/29/13, 192:15-193:2).

Turning to the alleged procedural violations, from the outset, the Board denies the existence of same. Beyond that, even if Plaintiffs' contentions were correct, they would not create procedural violations for which relief would be available through IDEA.

The Reauthorization of IDEA in 2004 specifically requires judicial findings of a deprivation of a free appropriate public education to be based upon substantive grounds. The only time relief is available to parents for procedural violations is when the procedural violations impeded the student's right to a free appropriate public education, significantly impeded parental participation in decision-making for the student's educational program, and when they caused the student to be deprived of educational benefit. 20 U.S.C. §1415(f)(3)(E)(ii). None of those situations is present in this matter.

In support of their argument, Plaintiffs claim D.C. did not get notice of the discontinuation of occupational therapy. The fallacy of this contention is addressed above. We add here that Plaintiffs' reference to statements about T.C.'s functioning at the age of two as a reason why his program should not have been changed should be afforded no weight. (R-3 at 3).

Plaintiffs further claim that the District failed to respond to D.C.'s requests and concerns, thereby limiting her role in T.C.'s education. As explained above, the District did respond to D.C.'s request for an FBA by calling her and telling her one was not needed. (T-5/29/12, 125:5-20). Plaintiffs further contend no changes were made to T.C.'s program as a result of parental concerns expressed at the IEP meeting. Parental concerns obviously were considered by the Team and recorded in the IEPs. (P-40, P-41, P-42, P-1, R-2, R-5, R-6). Parental concerns expressed at an IEP meeting are exactly that – concerns. They do not amount to requests for which written notice, beyond the IEP, is required. N.J.A.C. 6A:14-2.3.

Two of the specific written requests from D.C. are from 2007 and thus any claims that possibly could have been brought regarding them are time-barred pursuant to 20 U.S.C. §1415(b)(6)(B). (P-14, P-15). The third involved a request for a specific aide to be assigned to T.C. (P-19). The content of that letter makes it apparent that the District already had responded to this request, though not in the way D.C. wanted. That is not tantamount to the District not responding to her. A district not giving parents what they requested does not mean that the parent's ability to participate in the decision-making process was impeded. L.G. v. Fair Lawn Bd. of Educ., 2011 U.S. Dist. LEXIS 69232 (3d Cir.). Moreover, Plaintiffs did not offer any

credible evidence at the hearing to establish that the aide provided to T.C. was inappropriate or unable to meet his needs in any way.

In ruling in favor of the Board, the ALJ did not make any finding of fact that D.C.'s ability to participate in the decision-making process for T.C. had been impeded in any way. Quite to the contrary, she found: "T.C.'s parent was actively involved in developing his education program, and participated in all IEP and transition planning." (ALJ's decision at 28). A review of the administrative record reveals no basis on which to reverse that conclusion.

Accordingly, Plaintiffs' allegations regarding procedural violations, if proper to consider in these proceedings at all, are not supported by the record or the case law submitted in their brief, and no relief should be afforded to them as a result. The ALJ did not find any procedural violations on the part of the Board that significantly impeded Plaintiffs' participation in the decision making process or that denied T.C. educational benefits, nor did the Board witnesses admit to the commission of any. Accordingly, no relief is available through IDEA to Plaintiffs for any of the alleged procedural violations and there is no justification to overturn the ALJ's decision that the Board offered T.C. FAPE.

## CONCLUSION

It is respectfully submitted as a matter of fact and law that the record from the proceedings below supports the ALJ's decision in this matter that the District fulfilled its obligations to T.C. under IDEA and appropriately graduated him in June of 2012. As detailed herein, T.C. derived meaningful educational benefit from the educational programming he was provided through his IEPs and demonstrated progress in his areas of disability. There are quite simply no grounds on which to reverse the ALJ's well-supported findings of fact and essential credibility determinations which led her to the conclusion that the program and placement proposed by the Board did indeed meet its obligation to provide FAPE to T.C.

Based upon all foregoing, and as explained more fully in the record below, previously filed with the Court, Defendant respectfully submits that Plaintiffs' Motion for Summary Judgment should be denied, upholding the ALJ's decision and dismissing Plaintiffs' Complaint in its entirety with prejudice.

Respectfully submitted,

**SCHENCK, PRICE, SMITH & KING, LLP**
Attorneys for Defendant
Mount Olive Township Board of
Education

By:/s/ *Robin S. Ballard*
ROBIN S. BALLARD, ESQ. (RB-7199)

Dated: May 28, 2013