Return Date: June 17, 2013

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

D.C. o/b/o T.C. and D.C.,

Plaintiffs,

v.

MOUNT OLIVE TOWNSHIP BOARD
OF EDUCATION,
Defendant.

**Oral Argument Requested**

Civil Action No.: 2:12-cv-05592-KSH-CW

---

## REPLY BRIEF IN FURTHER SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

---

PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
Jenna Statfeld Harris, Esq.
1285 Avenue of the Americas
New York, NY 10019-6064
(212) 373-3879
jharris@paulweiss.com

EDUCATION LAW CENTER
Ruth Deale Lowenkron, Esq.
60 Park Place, Suite 300
Newark, N.J. 07102
(973) 624-1815, ext. 21.
rlowenkron@edlawcenter.org

*Attorneys for Plaintiffs D.C. o/b/o T.C. and D.C.*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................ ii

PRELIMINARY STATEMENT ...................................................................... 1

ARGUMENT ................................................................................................... 2

A.       Legal Standard ................................................................................. 2

B.       Mt. Olive Violated T.C.'s Right to FAPE ....................................... 3

    1.     Mt. Olive Failed to Meet Its Obligations to Evaluate T.C. ........... 3

    2.     Mt. Olive Failed to Provide an IEP Based on T.C.'s Unique Needs.... 7

         (a)   Mt. Olive Failed to Provide an Appropriate Educational Placement for T.C. Based on his Individual Needs .................. 7

         (b)   Mt. Olive Failed to Provide T.C. with Appropriate Related Services .......................................................................................... 8

    3.     Mt. Olive Failed to Address T.C.'s Behavioral Needs ...................... 9

    4.     Mt. Olive Impeded D.C. from Participating in the IEP Decision-Making Process .............................................................................. 11

    5.     Mt. Olive Prematurely Graduated T.C. ......................................... 12

    6.     Mt. Olive Committed Extensive Procedural Violations ................. 13

CONCLUSION ............................................................................................. 14

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Bd. of Educ. of Hendrick Hudson Cen. Sch. Dist. v. Rowley,*
   458 U.S. 176 (1982) ...................................................................................3, 14

*Brown v. Sch. Dist. of Phila.,*
   2012 WL 3064022 (E.D. Pa. 2012) ..............................................................14

*D.E.R.* v. *Bd. of Educ. of Ramsey,*
   2005 WL 1177944 (D.N.J. May 18, 2005) ....................................................11

*D.F.* v. *Collingswood,*
   694 F.3d 488 (3d Cir. 2010) ...........................................................................5

*Doe v. Maher,*
   793 F.2d 1470 (9th Cir. 1986) .........................................................................7

*M.C.* v. *Central Regional Sch. Dist.,*
   81 F.3d 389 (3d Cir. 1996) ..............................................................................5

*M.G.* v. *Caldwell-West Caldwell Bd. of Educ.,*
   804 F. Supp. 2d 305 (D.N.J. 2011) .................................................................9

*Matsuhita Elec. Indus. Co. v. Zenith Radio Corp.,*
   475 U.S. 574 (1986) .........................................................................................2

*N.B. v. Hellgate Elem. Sch. Dist.,*
   541 F.3d 1202 (9th Cir. 2008) .........................................................................5

*P.V. v. Sch. Dist. of Phila.,*
   2013 WL 618540 (E.D.Pa. 2013) ...................................................................6

*Ridgewood Bd. of Educ. v. N.E.,*
   172 F.3d 238.....................................................................................................3

*Rodrigues v. Fort Lee Bd. of Educ.,*
   2011 WL 486151 (D.N.J. 2011) ...............................................................12, 13

*S.N. v. Washington Twp. Bd. of Educ.,*
   2012 WL 4753428 (D.N.J. 2012) ..................................................................14

*T.C.* v. *N.Y.C. Dep't. of Educ.*,
    584 F.3d 412 (2d Cir. 2009) ...................................................................11

STATUTES

20 U.S.C. §§1414(a)(1)(A), 1414(b)(3)(B) ...............................................5

20 U.S.C. §§1414(a)(1)(A), (b)(3)(B) ......................................................4

20 U.S.C. §1414(a)(2)(ii) ...........................................................................5

20 U.S.C. §1414(b)(3) ..............................................................................11

20 U.S.C. §§1414(d)(1)(A)(i), 1414(d)(3)(A) ...........................................5

20 U.S.C. §1414(d)(3)(B)(i) ....................................................................6, 9

20 U.S.C. §1415(k)(1)(E) .........................................................................11

Individuals with Disabilities Education Act, 20 U.S.C. § 1400, *et seq.*
    ("IDEA") .................................................................................................2

N.J.S.A. 18A:46-1.1 ...................................................................................2

OTHER AUTHORITIES

34 C.F.R. 104.35(a) ....................................................................................7

34 C.F.R. 300.530(e)(1) ...........................................................................11

34 C.F.R. 300.530(c)-(d) ............................................................................6

N.J.A.C. 6A:14-2.3(h)(5) ..........................................................................10

N.J.A.C. 6A:14-3.7(c) .................................................................................5

N.J.A.C. 6A:14-3.7(c)(1), 3.7(e)(11)-(13), 3.7(g)-(h) .............................12

N.J.A.C. 6A:14-3.8(a) .................................................................................6

## PRELIMINARY STATEMENT

T.C. is a student with autism and other disabilities who was denied a free appropriate public education ("FAPE") by Defendant Mt. Olive Township Board of Education ("Mt. Olive"). The Brief in Support of Plaintiffs' Motion for Summary Judgment (the "Mot.") provided extensive evidence to establish each of Mt. Olive's egregious violations, while Mt. Olive's Opposition to Plaintiffs' Motion for Summary Judgment (the "Opp.") repeatedly misstated the facts, misrepresented well-established law and failed to establish that it provided FAPE to T.C.

Mt. Olive did not even address – let alone offer contradictory evidence as to – the following material facts: T.C. has an IQ score of 79 (8th percentile); Mt. Olive nonetheless placed T.C. in general education for more than 80% of his school day; Mt. Olive never re-evaluated T.C. in critical areas including Applied Behavioral Analysis ("ABA"), audiometry (hearing) and speech-language; Mt. Olive failed to provide social and adaptive skill training to T.C.; Mt. Olive forced T.C. to work with different aides despite his need for consistency; Mt. Olive removed the one aide that had actually helped T.C.; T.C.'s behaviors in school twice resulted in police involvement; Mt. Olive moved T.C.'s exercise equipment to a new location which rendered it unavailable to T.C.; Mt. Olive's occupational therapist recognized that T.C. benefitted from a "sensory diet" (the regimen of activities to

1

help manage a student's sensory needs); Mt. Olive established occupational therapy ("OT") goals for T.C. which were not measurable, annual or comprehensive; T.C. did not make progress towards his "goals"; Mt. Olive failed to provide prior written notice when it entirely removed OT from T.C.'s IEP; Mt. Olive deprived T.C. of the required level of home instruction during his indefinite suspension; and Mt. Olive never ensure that the appropriate postsecondary agencies assisted T.C.

These undisputed facts demonstrate Mt. Olive's serious violations of the Individuals with Disabilities Education Act, 20 U.S.C. § 1400, *et seq.* ("IDEA"), and the Court need not go beyond them.  Should the Court, however, consider the issues presented by Mt. Olive, Plaintiffs are still entitled to reversal of T.C.'s graduation status and compensatory services, as Plaintiffs have provided ample evidence of Mt. Olive's extensive IDEA violations.

## ARGUMENT

### A.    Legal Standard

Although Mt. Olive attempts to make the facts of this case seem convoluted, there are no genuine issues of material fact. Mt. Olive failed to meet its burden of proving "specific facts showing that there is a *genuine issue* for trial." *Matsuhita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted) (emphasis in original). The uncontroverted facts, coupled with Mt. Olive's failure

to meet its burden of proof before the administrative law judge ("ALJ") pursuant to N.J.S.A. 18A:46-1.1, entitle Plaintiffs to Summary Judgment.

**B.    Mt. Olive Violated T.C.'s Right to FAPE**

Plaintiffs offered extensive evidence of Mt. Olive's numerous violations of T.C.'s rights. Mot. at 9-38. Mt. Olive's actions and omissions completely denied T.C. the opportunity to receive "meaningful educational benefit," *Bd. of Educ. of Hendrick Hudson Cen. Sch. Dist. v. Rowley*, 458 U.S. 176, 205-06 (1982), and "significant learning." *Ridgewood Bd. of Educ. v. N.E.*, 172 F.3d 238, 247. Notwithstanding citation to these FAPE standards, Opp. 11-13, Mt. Olive argues that it does not need to provide anything more than *de minimis* benefits to a student with disabilities. *Id.*, 12-13.   Such a mischaracterization of the law completely disregards Mt. Olive's IDEA-mandated obligations to T.C.

**1.    Mt. Olive Failed to Meet Its Obligations to Evaluate T.C.**

Mt. Olive contends that its failure to properly evaluate T.C. was not raised in the proceeding below, and is therefore not properly before this Court on appeal. Opp. at 26-27.  Mt. Olive is wrong.  Plaintiffs *repeatedly* raised Mt. Olive's failure to properly evaluate and re-evaluate T.C. in the proceeding below. *See, e.g.*, Amended Due Process Petition (attached and hereafter "Ex. A"), at 8; Exhibit 12 to Declaration ("Dec.") of Harris, (hereafter referred to as "Ex. 12"), 37:9-25, 39:21-40:10, 96:22-97:3, 100:8-11, 218:2-8, 219:3-6; Exhibit 17 to Harris Dec.,

(hereafter referred to as "Ex. 17"), 60:24-62:18, 78:25-79:12, 122:4-20. Thus, this Court is undoubtedly able to review this issue.

Moreover, on the merits, Mt. Olive had a clear obligation to evaluate and re-evaluate T.C. as a student with disabilities. Plaintiffs provided ample evidence in the Motion that Mt. Olive failed to do so. Mt. Olive failed to present any contradictory evidence – because there is none.

*Initial Evaluations*. A school district is required to conduct a "full and individual initial evaluation" of a child "in all areas of suspected disability." 20 U.S.C. §§1414(a)(1)(A), (b)(3)(B). Mt. Olive not only failed to initially evaluate T.C. in 2007 in this area, it further failed to evaluate T.C. in 2008, 2009, 2010, 2011 and 2012 in the same area of well-documented need.  That T.C.'s initial evaluation was done in another school district is a red herring, Opp. at 28-29; it has no bearing on Mt. Olive's obligation to evaluate T.C. once he enrolled in Mt. Olive.

It is undisputed that Mt. Olive never formally evaluated T.C.'s sensory processing needs, despite the enormous number of district documents highlighting T.C.'s need for such an evaluation. *See, e.g.,* Exhibit 1 to Harris Dec. (hereafter "Ex. 1"); Exhibit 2 to Harris Dec. (hereafter "Ex. 2"); Exhibit 3 to Harris Dec. (hereafter "Ex. 3"); Exhibit 4 to Harris Dec. (hereafter "Ex. 4"); Exhibit 5 to Harris Dec. (hereafter "Ex. 5"); Exhibit 6 to Harris Dec. (hereafter "Ex. 6"); Exhibit 7 to

Harris Dec. (hereafter "Ex. 7"). Mt. Olive admits that it was aware of T.C.'s needs in this area, and that it failed to conduct the relevant evaluation. Opp. at 31-33. The law is clear: students must be *evaluated* in all areas of suspected disability, 20 U.S.C. §§1414(a)(1)(A), (b)(3)(B), and any services must be grounded in the evaluation, 20 U.S.C. §§1414(d)(1)(A)(i), (3)(A); N.J.A.C.6A:14-3.7(c); *see also*, *N.B. v. Hellgate Elem. Sch. Dist.*, 541 F.3d 1202, 1210 (9th Cir. 2008) ("without evaluative information . . . it was not possible for the IEP team to develop a plan reasonably calculated to provide . . . a meaningful educational benefit").

Mt. Olive alternatively claims that it did not evaluate T.C. because  D.C. never formally requested a sensory processing evaluation, Opp. 31-32, ignoring D.C.'s repeated statements of concern about T.C.'s sound and sensory processing needs. *See, e.g.,* Ex. 1 – Ex. 2, Ex. 4 – Ex. 6, Exhibit 27 to Harris Dec. (hereafter "Ex. 27"); Exhibit 28 to Harris Dec. (hereafter "Ex. 28"); Exhibit 29 to Harris Dec. (hereafter "Ex. 29"). Mt. Olive's contention is also inapposite: a district's obligation to evaluate a child in all areas of suspected disability is not at all dependent on a parent's request. 20 U.S.C. §§1414(a)(1)(A), 1414(b)(3)(B); *see also D.F.* v. *Collingswood,* 694 F.3d 488, 500 (3d Cir. 2010); *M.C.* v. *Central Regional Sch. Dist.*, 81 F.3d 389, 397 (3d Cir. 1996).

It is similarly undisputed that Mt. Olive never evaluated T.C.'s behavioral needs. Ex. 1- Ex. 8, Ex. 12, 125:5-14. The law is just as clear in this area: a district

*must* consider providing a Functional Behavioral Assessment ("FBA") to a student (1) when the parent requests such an evaluation (20 U.S.C. §1414(a)(2)(ii)); (2) when the child's behavior impedes his or her learning or the learning of others (20 U.S.C. §1414(d)(3)(B)(i)); and (3) if warranted when the child's disciplinary change in placement exceeds ten consecutive school days (34 C.F.R. §§300.530(c)-(d)). Although an FBA was required on each of these grounds in T.C.'s case, *see* Mot. at 23-26, an FBA was never conducted.

*Re-evaluations*. New Jersey law requires that "[w]ithin three years of the previous classification*,* a multi-disciplinary reevaluation shall be completed to determine whether the student continues to be a student with a disability." N.J.A.C. 6A:14-3.8(a). Mt. Olive blatantly misstates this regulation, asserting that it merely requires a district to "meet with parents at least every three years." Opp. at 29. Moreover, the undisputed evidence demonstrates that Mt. Olive failed to re-evaluate T.C.'s OT needs  *See* Ex. 1 - Ex. 7; *see also* Ex.12, 218:19-219:22 (Mt. Olive's occupational therapist's testimony in 2012 that she had not conducted an OT evaluation of T.C. since 2007).

Mt. Olive incorrectly contends that the removal of OT – a crucial related service – from T.C.'s IEP did not require a re-evaluation because it was not a "significant change in placement," relying inappropriately on *P.V. v. Sch. Dist. of Phila.*, 2013 WL 618540 (E.D.Pa. 2013), a case about IDEA's parental

involvement requirements, not its evaluation requirements.  Opp. at 30-31. To the contrary, a district is required to evaluate – or re-evaluate – a student before any "significant change in placement." 34 C.F.R. 104.35(a). According to the Ninth Circuit, a significant change in placement occurs "when there is a significant change in program *or services*," *Doe v. Maher*, 793 F.2d 1470, 1497 (9th Cir. 1986) (emphasis added) *aff'd as modified sub nom. Honig v. Doe*,  484 U.S. 305 (1988). Here, the total removal of a crucial related service from T.C.'s IEP after it had been provided for many years is unquestionably a significant change that warrants a re-evaluation.

### 2.  Mt. Olive Failed to Provide an IEP Based on T.C.'s Unique Needs

(a)  <u>Mt. Olive Failed to Provide an Appropriate Educational Placement for T.C. Based on his Individual Needs</u>

Mt. Olive placed T.C. in general education classes with minimal support for the 2011-2012 school year despite his academic and behavioral regression. Ex. 7, Exhibit 10 to Harris Dec. (hereafter "Ex. 10"); Exhibit 16 to Harris Dec. (hereafter "Ex. 16"). Mt. Olive continues to ignore the indisputable evidence of T.C.'s regression and argues that Plaintiffs did not cite to the record below to support their contentions. Nothing could be further from the truth.  Plaintiffs cited to T.C.'s scores on district evaluations to demonstrate his cognitive levels and significant regression. *See,* Ex. 10; Ex. 12, 151:16-155:2; Ex. 16 at 2-3; Mot. at 4-6, 16, 24-25. Plaintiffs also presented expert testimony about the troubling nature of this

regression. Ex. 17, 48:12-50:22 (Dr. Herrero-Taylor testified that she would have expected "consistency in his scores" and that "16 point drops" are "highly unusual overall, but especially at that age range").

T.C.'s behavior similarly regressed. T.C. never had a significant behavioral incident prior to 2010. Ex. 12, 60:22-61:14, 65:11-20. During the 2010-2011 and 2011-2012 school years, however, T.C. had major behavioral incidents, some of which even resulted in calls to the police and disciplinary action. *Id.*, 61:1-14, 22-24; Exhibit 18 to Harris Dec. (hereafter "Ex. 18"). Mt. Olive personnel testified to T.C.'s emotional regression, as well. Ex. 12, 81:25-82:7.

(b)   Mt. Olive Failed to Provide T.C. with Appropriate Related Services

Mt. Olive failed to provide for critical sensory and OT related services in T.C.'s 2011-2012 IEP.  Mt. Olive recognized that T.C.'s access to a sensory diet and exercise equipment was crucial, and that D.C. requested that T.C. access these services. Ex. 1, Ex. 4 – Ex. 7, Ex. 12, 189:19-21, 209:19-210:7, Opp. at 4, 20, 32-33. Nonetheless, T.C.'s sensory diet was removed from his IEP and T.C. was prevented from accessing the equipment. *See* Mot. at 19; Ex. 12, 228:10-230:18; Exhibit 15 to Harris Dec. (hereafter "Ex. 15"), 66:23-68:15, Opp. at 4. Similarly, OT services were abruptly removed from T.C.'s IEP.  Without citing to any non-testimonial evidence, Mt. Olive asserts that T.C. "had a sensory diet in place the

entire time" and denies that OT was crucial for T.C. Opp. at 3, 19. These conclusory assertions are baseless.

### 3.   Mt. Olive Failed to Address T.C.'s Behavioral Needs

_Functional Behavioral Assessment_. Where a student exhibits behaviors that interfere with his or her learning, or the learning of others, the district must conduct an FBA. 20 U.S.C. § 1414(d)(3)(B)(i); _M.G._ v. _Caldwell-West Caldwell Bd. of Educ._, 804 F. Supp. 2d 305, 314–15 (D.N.J. 2011). There can be no doubt in this case that T.C.'s troubling behaviors, which interfered with his learning and the learning of others, and resulted in police intervention as well as multiple disciplinary actions, required an FBA. _See, e.g.,_ Ex. 12: 61:1-14 (district personnel noted that T.C. "physically assaulted another student" on three occasions); _see also_ Mot. at 24-26. Instead of addressing the plain and egregious facts, Mt. Olive emphasizes that T.C.'s behaviors did not constitute a "pattern," Opp. at 22-23, despite expert testimony to the contrary, Ex. 17, 70:4-71:1 (behavioral expert testimony that T.C.'s "related behaviors" formed a "pattern" as they "are all one in the same") and the further fact that no such condition is included in IDEA's requirement for an FBA. 20 U.S.C. §1414(d)(3)(B)(i); _see also_ Ex. 18, 11:7-20 (if the "behavior is significant enough, you can do an FBA based on one event.").

Mt. Olive admits that D.C. requested an FBA, and does not contest – as it cannot – that an FBA was never conducted. Opp. at 22. Mt. Olive's assertion that a

district employee allegedly called D.C., *Id.*, is wholly inadequate to prove that it adhered to the required procedures upon receiving a parent's request for an evaluation pursuant to N.J.A.C. 6A:14-2.3(h)(5).

Moreover, Mt. Olive misstates the law regarding when an FBA is required. Where a student faces a disciplinary change in placement that exceeds ten consecutive school days, and where the student's behavior at issue is deemed not to be a manifestation of the child's disability, the child must "[r]eceive, as appropriate, a functional behavioral assessment, and behavioral intervention services and modifications, that are designed to address the behavior violation so that it does not recur." 34 CFR §§300.530(c), (d)(ii).  Apparently unaware of this regulation, and without any basis, Mt. Olive asserts that such a requirement is "contradictory" to IDEA's requirements. Opp. at 23. Mt. Olive's failure to provide an FBA to T.C. under these circumstances violated IDEA and denied T.C. FAPE.

*Manifestation Determination Review.*  Despite Mt. Olive's contention to the contrary, Plaintiffs extensively discussed Mt. Olive's numerous procedural and substantive violations with respect to T.C.'s Manifestation Determination Review ("MDR"). Mt. Olive admits that D.C did not receive IDEA-mandated written notice of the MDR,  Opp. at 24;  *see also* Ex. 12, 118:11-24, and its claim that D.C. was called about the MDR is both unsupported (as Mt. Olive presented no non-testimonial evidence of same) and inapposite (as it in no way fulfills Mt. Olive's

duty to provide written notice). Because D.C. did not have notice of the MDR, she did not participate in it, Mot. at 32; Ex. 21 at 3; Ex. 17, 89:18-90:7, as required by IDEA. 20 U.S.C. §1415(k)(1)(E).  Finally, Mt. Olive does not even attempt to present evidence that it reviewed T.C.'s records during the MDR as required by 34 C.F.R. §300.530(e)(1). Opp. at 5.

### 4.   Mt. Olive Impeded D.C. from Participating in the IEP Decision-Making Process

Despite Mt. Olive's baseless assertions to the contrary, Plaintiffs addressed D.C.'s involvement in the IEP decision-making process at length in the its petition for due process, Ex. A at 4-6, and throughout the hearing, *see, e.g.,* Ex. 12, 110:23-112:7, 125:5-14; Ex. 15, 42:16-22, 55:5-24; Ex. 17, 89:18-90:7. This issue is properly before this Court.

Moreover, it is undisputed that Mt. Olive failed to provide prior written notice when it entirely removed OT from T.C.'s IEP. This failure violated 20 U.S.C. §1414(b)(3) which requires written notice for a change of educational placement. *See D.E.R.* v. *Bd. of Educ. of Ramsey*, 2005 WL 1177944 at *13 (D.N.J. May 18, 2005) (failure to provide proper written notice to parent when changing student's grading system violated IDEA). *See also T.C.* v. *N.Y.C. Dep't. of Educ.*, 584 F.3d 412, 419 (2d Cir. 2009) (child's "educational placement" is more than a school's "bricks and mortar"; it includes the "classes, individualized attention and additional services a child will receive").

Mt. Olive further claims that D.C.'s OT claims are time-barred, arguing that they were not raised below. Mt. Olive is simply wrong. *See, e.g.* Ex. 1 – Ex. 7, Ex. 12, 110:23-112:7, 118:25-119:5, 125:5-14, Ex. 14, Ex. 28, Ex. 29, Ex. 32.

### 5. **Mt. Olive Prematurely Graduated T.C.**

Mt. Olive continues to ignore the proverbial elephant in the room by insisting on T.C.'s readiness to have graduated. T.C. did not reach, let alone make progress towards, his undisputed postsecondary goal – whether appropriate or not - to attend college. By senior year, T.C. had not applied to colleges or even obtained college applications. Ex. 12, 128:16-129:10.  As the ALJ found, T.C. was only ready to "improve daily living skills."  Exhibit 30 to Harris Dec. (hereafter "Ex. 30") at 28.  Mt. Olive failed to provide any specific details regarding T.C.'s preparedness for college through testimony or student records.

Mt. Olive misrepresents the case law and vastly understates its responsibilities with respect to T.C.'s transition planning. *See* N.J.A.C. 6A:14-3.7(c)(1), 3.7(e)(11)-(13), 3.7(g)-(h); *see also* Opp. at 16-17. Violations of IDEA's procedural requirements for transition planning may, indeed, rise "to the level of substantive violations." *Rodrigues v. Fort Lee Bd. of Educ.*, 2011 WL 486151 at *6 (D.N.J. 2011). Plaintiffs have cited extensive evidence showing that Mt. Olive's procedural violations with respect to transition planning deprived T.C. of FAPE.  T.C. regressed academically, and had a transition plan that lacked *any*

12

required assessments, was not updated annually, lacked specific and measurable postsecondary goals, failed to include information about agencies that could be helpful in transition planning, and failed to provide any individualized services to T.C. Mot. at 16, 35-37. *Cf. Rodrigues*, 2011 WL 486151 at \*7-9 (district provided appropriate transition planning where the student improved academically throughout high school; attended a social skills class created specifically for her; received a transition plan with relevant assessments and goals, a "considerable volume of information about agencies whose services could be helpful," and an "extensive 'senior year checklist'" and where extensive testimony was introduced about the student's particular abilities.). Mt. Olive failed to present *any* specific details about T.C.'s readiness to graduate. The only "evidence" offered by Mt. Olive is vague district personnel testimony that T.C. "was very good with self-advocacy skills," but even this lacked detail and was, of course, unsupported by non-testimonial evidence. Opp. At 18.

Mt. Olive's failure to address T.C.'s transition needs constituted a procedural violation of IDEA that denied T.C.'s right to FAPE.

### 6.   **Mt. Olive Committed Extensive Procedural Violations**

To the extent that any of Mt. Olive's flagrant violations were procedural, their impact on the denial of FAPE to T.C. is no less critical. Despite Mt. Olive's attempt to mischaracterize the law, it is well-established that (1) a procedural

13

violation can result in a denial of FAPE, *Rowley*, 458 U.S. at 205-06, *S.N. v. Washington Twp. Bd. of Educ.*, 2012 WL 4753428 at *2 (D.N.J. 2012); and (2) multiple procedural violations, taken together, may result in a denial of FAPE. *Brown v. Sch. Dist. of Phila.*, 2012 WL 3064022 at *5 (E.D. Pa. 2012). Mt. Olive mischaracterizes *Brown*, Opp. at 10, despite the fact that Plaintiffs simply referred to *Brown* to illustrate a court's consideration of the sum of multiple procedural violations. Mt. Olive's procedural violations – cumulatively and individually – denied T.C. FAPE. *See S.N.*, 2012 WL 4753428 at *2; *see also* Mot. at 11-15, 27-31. Mt. Olive's procedural violations were neither minor nor few in number and they demonstrate a blatant, flagrant, and repeated disregard of T.C.'s clear rights under IDEA.

## CONCLUSION

In response to overwhelming evidence of its violations of IDEA, Mt. Olive merely makes arguments which are based on total mischaracterizations of the law. Plaintiffs have demonstrated that uncontroverted facts establish that Mt. Olive violated the IDEA. As there is no genuine issue of fact, and Plaintiffs' claims are solidly supported by the law, Plaintiffs are entitled to summary judgment and respectfully request that this Court reverse T.C.'s graduation status and award compensatory services.

Dated:      New York, New York
            June 4, 2013

            Respectfully submitted,

            PAUL, WEISS, RIFKIND, WHARTON &
            GARRISON LLP

            By: _____
                Jenna S. Harris (jharris@paulweiss.com)
                1285 Avenue of the Americas
                New York, New York 10019-6064
                Tel.   (212) 373-3879
                Fax.   (212) 492-0879

            EDUCATION LAW CENTER

                Ruth Deale Lowenkron (rlowenkron@edlawcenter.org)
                60 Park Place,
                Suite 300
                Newark, N.J. 07102
                Tel.   (973) 624-1815
                Fax.   (973) 624-7339


                *Attorneys for Plaintiffs*
                *D.C. o/b/o T.C., and D.C.*

15