UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| D.C. o/b/o T.C. and D.C.,<br><br>　　　　　　　　Plaintiffs,<br><br>　　　　v.<br><br>MOUNT OLIVE TOWNSHIP BOARD OF EDUCATION,<br><br>　　　　　　　　Defendant. | **Oral Argument Requested**<br><br>Civil Action No.: 2:12-cv-05592-KSH-CLW |

## MEMORANDUM OF LAW
## IN SUPPORT OF PLAINTIFFS'
## MOTION FOR PRELIMINARY INJUNCTION

| | |
|---|---|
| PAUL, WEISS, RIFKIND,<br>WHARTON & GARRISON LLP<br>Jenna Statfeld Harris, Esq.<br>1285 Avenue of the Americas<br>New York, NY  10019-6064<br>(212) 373-3879<br>jharris@paulweiss.com | EDUCATION LAW CENTER<br>Ruth Deale Lowenkron, Esq.<br>60 Park Place, Suite 300<br>Newark, NJ  07102<br>(973) 624-1815, ext. 21<br>rlowenkron@edlawcenter.org |

*Attorneys for Plaintiffs D.C. o/b/o T.C. and D.C.*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................................1

JURISDICTION..........................................................................................................1

STATEMENT OF FACTS .........................................................................................1

LEGAL ARGUMENT ................................................................................................6

The Stay-Put Provision of IDEA Requires Mt. Olive to Maintain T.C.'s Current Educational Placement Pending Completion of All Judicial Proceedings..................................................................................................6

    I.    The Right to Stay-Put is Unequivocal and Expansive .........................7

    II.    The Stay-Put Provision is an Automatic Preliminary Injunction........11

    III.    T.C.'s "Current Educational Placement" is in the General Education Classroom with Extensive Supports and Related Services..................13

CONCLUSION ..........................................................................................................14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Anchorage Sch. Dist.* v. *M.P.*,
   689 F.3d 1047 (9th Cir. 2012) ............................................................................10

*B.A.W.* v. *E. Orange Bd. of Educ.*,
   No. 10-4039 (JLL), 2010 WL 3522096 (D.N.J. Aug. 31, 2010)......6, 7, 9, 11, 12

*Cronin* v. *Bd. of Educ. of E. Ramapo Cent. Sch. Dist.*,
   689 F. Supp. 197 (S.D.N.Y. 1988) ...................................................................8, 9

*D.F.* v. *Collingswood Borough Bd. of Educ.*,
   694 F.3d 488 (3d Cir. 2012) ...............................................................................11

*Drinker* v. *Colonial Sch. Dist.*,
   78 F.3d 859 (3d Cir. 1996) .........................................................................*passim*

*Honig* v. *Doe*,
   484 U.S. 305 (1988) .............................................................................................7

*J.E.* v. *Boyertown Area Sch. Dist.*,
   452 Fed. App'x 172 (3d Cir. 2011) ......................................................................8

*K.T.* v. *W. Orange Bd. of Educ.*,
   No. 01-3208 (WAB), 2001 WL 1715787 (D.N.J. Oct. 23, 2001).......................12

*M.R.* v. *Ridley Sch. Dist.*,
   No. 11-2235 (MSG), 2012 WL 3279230 (E.D. Pa. Aug. 13, 2012) ....................8

*P.C. Yonkers, Inc.* v. *Celebrations the Party & Seasonal Superstore, LLC*,
   428 F.3d 504 (3d Cir. 2005) ...............................................................................12

*Pardini* v. *Allegheny Intermediate Unit*,
   420 F.3d 181 (3d Cir. 2004) ...............................................................................12

*R.B.* v. *Mastery Charter Sch.*,
   762 F. Supp. 2d 745 (E.D. Pa. 2010)..................................................................13

*R.B.* v. *Mastery Charter Sch.*,
   No. 11-1009 (JAG), 2013 WL 3822154 (3d Cir. July 25, 2013) ......................6, 9

*R.S.* v. *Somerville Bd. of Educ.*,
   No. 10-4215 (MLC), 2011 WL 32521 (D.N.J. Jan. 5, 2011) ..............................8

*Ringwood Bd. of Educ.* v. *K.H.J.*,
   469 F. Supp. 2d 267 (D.N.J. 2006)..................................................................7, 8

*Sch. Comm. of Town of Burlington, Mass.* v. *Dep't of Educ.*,
   471 U.S. 359 (1985)...........................................................................................7

*Thomas* v. *Cincinnati Bd. of Educ.*, 918 F.2d 618 (6th Cir. 1990) ........................13

*W.R.* v. *Union Beach Bd. of Educ.*,
   No. 09-2268 (MLC), 2009 WL 4042715 (D.N.J. Nov. 19, 2009) ....................13

*Woods* v. *N.J. Dep't of Educ.*,
   No. 93-5123 (ERB), 20 IDELR 439 (3d Cir. Sept. 17, 1993).............................13

**Statutes**

20 U.S.C. §§ 1400 *et seq.*................................................................................*passim*

20 U.S.C. § 1401(19) .................................................................................................2

20 U.S.C. § 1414(d)(1)(A)(i) ...................................................................................10

20 U.S.C. § 1414(d)(3)(A) ......................................................................................10

20 U.S.C. § 1415(i) ....................................................................................................1

20 U.S.C. § 1415(i)(2) ...............................................................................................4

20 U.S.C. § 1415(j) ..............................................................................................6, 14

28 U.S.C. § 1331 .......................................................................................................1

**Regulations**

34 C.F.R. § 300.518 ................................................................................................14

N.J.A.C. 6A:14-2.6(d)(1) .........................................................................................7

N.J.A.C. 6A:14-2.7(t). ..............................................................................................5

iv

N.J.A.C. 6A:14-2.7(u) 14......................................................................................14

**Other Authorities**

Federal Rule of Civil Procedure 65 ........................................................................12

*Letter to Mary D. Watson,* U.S. Dep't of Educ. (Apr. 12, 2007). ...........................10

## PRELIMINARY STATEMENT

D.C. and D.C. on behalf of T.C. ("Plaintiffs") bring this action to enforce T.C.'s right under the "Stay-Put" provision of the Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400 *et seq.* ("IDEA") to remain in his "current educational placement" pending the outcome of these proceedings. Under well-established law, T.C.'s stay-put right is "unequivocal" and the Stay-Put provision functions as an "automatic preliminary injunction." Nevertheless, Defendant, Mount Olive Township Board of Education ("Defendant" or "Mt. Olive") has violated T.C.'s stay-put right and has refused to provide T.C. with *any* educational or related services since June 2012.

Plaintiffs, therefore, hereby respectfully request that this Court direct Mt. Olive to maintain T.C.'s educational placement during the pendency of this matter.

## JURISDICTION

This Court has jurisdiction to hear claims brought under IDEA pursuant to 20 U.S.C. § 1415(i) and 28 U.S.C. § 1331.

## STATEMENT OF FACTS

Plaintiff T.C. is a student determined eligible for special education and related services under IDEA based on a classification of "Autistic." (Compl.

¶ 21.)[1] T.C. is diagnosed with Autism, and has extensive anxiety, a moderate to severe language disorder, and a Sensory Processing Disorder with Sensory Over-Responsivity ("SOR") sub-type which includes extreme sensitivity to loud noises, such as babies crying, and crowded spaces. When T.C. faces situations that he perceives as threatening or overwhelming, he reacts with aggression or elopement. (Compl. ¶¶ 21, 22.)

T.C.'s Full Scale IQ is 79 (8th percentile), which places him in the Borderline range of intellectual functioning. (Compl. ¶ 102.) T.C.'s cognitive scores on academic assessments are in the low and very low range. (Compl. ¶ 102.) When T.C. attained the age of 18, a full guardian was court-appointed for T.C. (Compl. ¶ 93.) T.C. resides with his mother, Plaintiff D.C., and Plaintiffs reside, and have resided for all relevant times discussed herein, within the jurisdiction of Mt. Olive. For all relevant times discussed herein, Mt. Olive has been the "local education agency" as defined by IDEA, 20 U.S.C. § 1401(19), and has been the agency with primary responsibility for providing T.C. with a free appropriate public education ("FAPE"). (Compl., "Parties" ¶¶ 2-3.) T.C. attended Mt. Olive High School from 2007 through 2012. (Compl. ¶ 20.)

---

[1] "Compl. ¶ __" followed by a number refers to a paragraph in the Complaint in this matter filed with the District Court. Citations to "Ex.__" followed by a number refer to exhibits annexed to the accompanying Declaration of Jenna Statfeld Harris.

During T.C.'s time at Mt. Olive High School, his Individualized Education Programs ("IEPs") provided that he receive special education services and "related services," including an individual aide, speech/language therapy, Applied Behavioral Analysis ("ABA") therapy, occupational therapy, and programs to build his socialization skills and independent work skills, and to address his behavioral and conversational needs. (Compl. ¶¶ 25, 41.) However, T.C. did not receive the services provided for in his IEPs consistently or appropriately, and D.C. regularly expressed concerns about T.C.'s unmet needs at Mt. Olive High School. (Compl. ¶¶ 26-27, 32-34, 38-42, 47-50, 58-62, 81, 85-89, 91, 100-101, 105-110.)

T.C.'s most recent IEP was created by Mt. Olive in October 2011. (Compl. ¶¶ 81, 100, 107.) During the 2011-2012 school year, Mt. Olive placed T.C. exclusively in general education classes at Mt. Olive High School, merely offering a few limited supports such as a Study Skills class and "in-class support" in his English class, and even these minimal supports were not consistently or appropriately provided. (Compl. ¶¶ 28, 59, 60, 100, 107.) During an IEP meeting in October 2011, D.C. expressed her concern that T.C. was not adequately prepared to graduate, and was not ready to transition from high school. (Compl. ¶ 82.)

On March 27, 2012, Mt. Olive sent a "Notice of Graduation" to T.C., stating that Mt. Olive sought to graduate T.C. at the conclusion of the 2011-2012 school

3

year, and that such determination would become effective unless Plaintiffs challenged the proposed change in placement within 15 days. (ECF No. 22-49, Exhibit 26.) On April 10, 2012, Plaintiffs timely filed a due process petition[2] to challenge the notice of T.C.'s graduation from high school and the termination of his public education. (Compl. ¶ 113.)[3]

A due process hearing was held in the OAL before Administrative Law Judge Mumtaz Bari-Brown on May 29, June 4, and June 11, 2012. In a Final Order dated June 19, 2012, Judge Bari-Brown denied Plaintiffs' Petition and ordered that T.C. move forward with graduation at the end of the 2011-2012 school year. (Compl. ¶¶ 114-115.) On September 6, 2012, Plaintiffs timely filed a Complaint before this Court to appeal Judge Bari-Brown's decision pursuant to 20 U.S.C. § 1415(i)(2), among other provisions, seeking reversal of T.C.'s "graduated" status and compensatory services, and thereby invoking T.C.'s "automatic" and "unequivocal" right to stay-put. (Compl., "Jurisdiction and Venue" ¶ 1.)

---

[2]  Plaintiffs' April 10, 2012 Due Process Petition amended Plaintiffs' original petition for Due Process and Emergent Relief, filed on March 7, 2012, seeking (a) T.C.'s immediate return to school; (b) updated evaluations of T.C.; and (c) an IEP reflecting the updated evaluations. (Compl. ¶¶ 64-68, 111.) T.C. was finally returned to school after more than two months of an indefinite suspension, solely as a result of a settlement reached by counsel in the Office of Administrative Law ("OAL"). (Compl. ¶ 70.)

[3]  The New Jersey Department of Education, Office of Special Education Programs ("OSEP") forwarded the April 10, 2012 Petition to OAL on April 11, 2012. OAL later requested that Plaintiffs re-submit the petition, which they did on May 9, 2012. (Compl. ¶ 113.)

Mt. Olive did not prepare an IEP for T.C. for the 2012-2013 school year. On December 20, 2012, Plaintiffs' counsel sent a letter to Mt. Olive's counsel, requesting that Mt. Olive provide T.C. with special education and related services pursuant to his "automatic" and "unequivocal" right to stay-put. (Ex. A.)

On January 10, 2013, Mt. Olive's counsel sent a letter to Plaintiffs' counsel rejecting Plaintiffs' request entirely, and disregarding T.C.'s right to stay-put, without providing any explanation. (Ex. B.) On January 18, 2013, Plaintiffs' counsel sent a letter to OSEP, seeking assistance in enforcing T.C.'s right to stay-put pursuant to N.J.A.C. 6A:14-2.7(t). (Ex. C.) Between January 22, 2013 and April 12, 2013, Plaintiffs' counsel, Mt. Olive's counsel and OSEP corresponded regarding OSEP's capacity to intervene in enforcing T.C.'s right to stay-put. On April 12, 2013, OSEP notified the parties that it would not enforce T.C.'s right to stay-put, at least until the current proceedings before this Court were resolved. (Exs. D-J.)

Mt. Olive again did not prepare an IEP for T.C. for the 2013-2014 school year, nor has Mt. Olive provided T.C. with any services whatsoever to date. On November 4, 2013, Plaintiffs' counsel again requested, by letter to Mt. Olive's counsel, that Mt. Olive provide T.C. with special education and related services pursuant to his "automatic" and "unequivocal" right to stay-put. (Ex. K.) On November 19, 2013, by letter to Plaintiffs' counsel, Mt. Olive's counsel again

denied Plaintiffs' request and disregarded T.C.'s right to stay-put, without providing any explanation. (Ex. L.)

Despite Mt. Olive's clear-cut obligation to maintain T.C.'s current educational placement pending the outcome of these proceedings, Mt. Olive has egregiously ignored T.C.'s "unequivocal" and "automatic" right, and T.C. has not received any special education or related services from Mt. Olive since June 2012—more than 18 months ago.

## LEGAL ARGUMENT

**The Stay-Put Provision of IDEA Requires Mt. Olive to Maintain T.C.'s Current Educational Placement Pending Completion of All Judicial Proceedings**

Under IDEA, the parent of a child with disabilities has the right to challenge the educational placement of the child through an impartial due process hearing, and appeal as necessary to state or federal court. 20 U.S.C. §§ 1400(b), 1400(f), 1400(g), 1400(i). The "Stay-Put" provision of IDEA governs the child's educational status when such a challenge is brought, and mandates that "during the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child." 20 U.S.C. § 1415(j); *R.B.* v. *Mastery Charter Sch.*, No. 11-1009 (JAG), 2013 WL 3822154, *3 (3d Cir. July 25, 2013); *B.A.W.* v. *E. Orange Bd. of Educ.*, No. 10-4039 (JLL), 2010 WL 3522096 at

\*5 (D.N.J. Aug. 31, 2010); *Ringwood Bd. of Educ.* v. *K.H.J.*, 469 F. Supp. 2d 267, 270 (D.N.J. 2006); *see also* N.J.A.C. 6A:14-2.7(u).

## I. The Right to Stay-Put is Unequivocal and Expansive

The Supreme Court has described the Stay-Put right as "unequivocal," as the Stay-Put provision plainly provides that "'the child *shall* remain in the then current educational placement.'" *Honig* v. *Doe*, 484 U.S. 305, 323 (1988) (emphasis in original). In describing the purpose of "Stay-Put," the Supreme Court noted that it is clear that "Congress very much meant to strip schools of the *unilateral* authority they had traditionally employed to exclude disabled students, particularly emotionally disturbed students, from school." *Id.* at 323 (emphasis in original); *see also Sch. Comm. of Town of Burlington, Mass.* v. *Dep't of Educ.*, 471 U.S. 359, 373 (1985) (asserting that at least one purpose of the Stay-Put requirement was to "prevent school officials from removing a child from the regular public school classroom over the parents' objection pending completion of the review proceedings.").

This unequivocal right to Stay-Put applies with full force to the proposed graduation of a student. As this Court has repeatedly noted, it is "undisputed" that "graduation constitutes a change in educational placement," and any interpretation to the contrary "would render the stay-put provision meaningless because the school district could unilaterally graduate handicapped children." *B.A.W.*, 2010

7

WL 3522096 at *4; *see also Cronin* v. *Bd. of Educ. of E. Ramapo Cent. Sch. Dist.*, 689 F. Supp. 197, 202 n.4 (S.D.N.Y. 1988).

Given the purpose of the Stay-Put provision — to prevent unnecessary disruption to a student's education — the student's right to remain in the current educational placement continues through the court appeals, "until the dispute with regard to their placement is ultimately resolved." *Drinker* v. *Colonial Sch. Dist.*, 78 F.3d 859, 868 (3d Cir. 1996); *J.E.* v. *Boyertown Area Sch. Dist.*, 452 Fed. App'x 172, 176 (3d Cir. 2011); *see also Ringwood Bd. of Educ.*, 469 F. Supp. 2d at 270; *M.R.* v. *Ridley Sch. Dist.*, No. 11-2235 (MSG), 2012 WL 3279230 at *11-13 (E.D. Pa. Aug. 13, 2012). There is thus absolutely no doubt that the Stay-Put provision is fully in force during proceedings before the district court.

Moreover, parents and students with disabilities cannot "lose their stay put protection *except by affirmative agreement to give it up*." *Drinker*, 78 F.3d at 868 (emphasis added); *see also Ridley Sch. Dist.*, 2012 WL 3279230 at *4. The Stay-Put provision's "injunctive effect" is not waived or "obviate[d]" simply by the fact that "school years come and go while the litigation is pending, and successive due process petitions may be filed addressing the same dispute in each school year." *R.S.* v. *Somerville Bd. of Educ.*, No. 10-4215 (MLC), 2011 WL 32521 at *11 (D.N.J. Jan. 5, 2011). Without an explicit waiver, a student's right to stay-put remains, regardless of the amount of time that has passed since the disputed change

8

of placement was made. Notably, the Third Circuit held that a school district violated the student's right to stay-put where the student had been unilaterally disenrolled from her educational program four years earlier, in 2009, and had not received any services in the "last agreed-upon program." *Mastery Charter Sch.*, 2013 WL 3822154 at *3-4 ("All parties agree that the 2008 IEP is the most current IEP, and the 2008 IEP clearly states that R.B.'s LEA is Mastery Charter School. As such, R.B.'s placement at Mastery is the 'status quo' that is to be maintained through the stay-put provision. To hold otherwise would render the stay-put provision useless, as schools could implement unilateral changes prior to a parent's suit and then claim that the new change is the status quo. This cannot be.")

Thus, a parent cannot waive the right to stay-put by mere inaction. *See, e.g.*, *B.A.W.*, 2010 WL 3522096 at *4. Especially in the case of a proposed graduation—where a student "will receive no instruction at all" and lose access to public education entirely—a waiver of such right must be explicit. *Cronin*, 689 F. Supp. at 203. In holding that the Stay-Put provision applies to the decision to graduate a student with disabilities, the *Cronin* court stated that "[t]here is no question that the termination of an individual child's educational program inherent in a graduation will significantly affect a child's learning process." Where, as here, there was absolutely no "explicit agreement" by the parent and the school district regarding the student's stay-put placement, Plaintiffs "did not waive that

9

protection" and the Stay-Put provision remains in full force. *Drinker*, 78 F.3d at 868.

Over two years have passed since Mt. Olive created T.C.'s most recent IEP. Notably, the Stay-Put provision does not excuse Mt. Olive from its responsibility to provide a statutorily compliant IEP that addresses T.C.'s *present* levels of academic achievement and functional performance. *See, e.g., Anchorage Sch. Dist.* v. *M.P.*, 689 F.3d 1047, 1056 (9th Cir. 2012); 20 U.S.C. §§ 1414(d)(1)(A)(i), 1414(d)(3)(A). A school district is required to meet "periodically, but not less than annually, to review, and if appropriate, revise, an IEP for a child with a disability, *even if* [it] is required to maintain the child's current educational placement while administrative or judicial proceedings are pending." *Letter to Mary D. Watson*, U.S. Dep't of Educ., Office of Special Education Programs (Apr. 12, 2007), *available at* http://www2.ed.gov/policy/speced/guid/idea/letters/2007-2/watson041207stayput2q2007.doc (emphasis added). Thus, the "current educational placement" required by the Stay-Put provision refers to the "general educational program of the student," and must necessarily take into account the current needs of the student so as to provide educational services that are appropriate at that time. *See, e.g., Anchorage Sch. Dist.*, 689 F.3d at 1058 ("We conclude that an IEP developed for a second grader is not reasonably calculated to ensure educational benefits to that student in his third grade year . . . and that the

[school district] deprived M.P. of a FAPE."). Here, Mt. Olive's obligation under the Stay-Put provision necessarily requires that it consider T.C.'s current needs, and provide T.C. with special education and related services consistent with those needs. Given the substantial time that has passed since T.C.'s last IEP, it is particularly critical that Mt. Olive consider T.C.'s *present* levels of academic achievement and functional performance in implementing his stay-put placement.

## II. The Stay-Put Provision is an Automatic Preliminary Injunction

The Stay-Put provision "functions, in essence as an automatic preliminary injunction." *Drinker*, 78 F.3d at 864-65. Thus, a parent triggers the protections of the Stay-Put provision simply by filing a request for mediation or due process petition. *See, e.g., D.F.* v. *Collingswood Borough Bd. of Educ.*, 694 F.3d 488, 492 (3d Cir. 2012) ("By filing the [due process] petition, A.C. triggered the IDEA's 'stay-put' requirement."); *see also B.A.W.*, 2010 WL 3522096 at *4 ("The following key factors are undisputed . . . the filing of a request for a due process hearing triggers the procedural safeguards set forth in § 1415 of the IDEA, including but not limited to the stay put provision.")

The Stay-Put provision reflects "Congress' policy choice that all handicapped children, regardless of whether their case is meritorious or not, are to remain in their current educational placement until the dispute with regard to their placement is ultimately resolved." *Id.* (citing *Drinker*, 78 F.3d at 864).

11

Consequently, the "usual prerequisites to injunctive relief" do not need to be satisfied when a motion is brought to enforce a student's right to Stay-Put. *Drinker*, 78 F.3d at 864. The standard test for a preliminary injunction pursuant to Federal Rule of Civil Procedure 65 is "inapposite to an application involving IDEA's 'stay put' provisions," *K.T.* v. *W. Orange Bd. of Educ.*, No. 01-3208 (WAB), 2001 WL 1715787 at *2-3 (D.N.J. Oct. 23, 2001), because "Congress has already balanced the competing harms as well as the competing equities." *Pardini* v. *Allegheny Intermediate Unit*, 420 F.3d 181, 188 (3d Cir. 2004).[4]

Because the Stay-Put provision "substitutes an absolute rule in favor of the status quo for the court's discretionary consideration of the factors of irreparable harm and either a likelihood of success on the merits or a fair ground for litigation and balance of hardships," the *only* relevant inquiry once a case is brought under it is "the identification of 'the then current educational placement.'" *Drinker*, 78 F.3d at 864-65; *see also R.B.* v. *Mastery Charter Sch.*, 762 F. Supp. 2d 745, 756-57

---

[4] Even if the usual requirements for a preliminary injunction to be granted *did* apply, Plaintiffs would meet that four-part standard. First, it is likely that Plaintiffs will ultimately succeed on the merits given the extensive breaches by Mt. Olive of T.C.'s right to FAPE under IDEA that are clearly documented in Plaintiffs' Complaint and Motion for Summary Judgment. Second, if the injunction is denied, T.C. will continue to be wholly barred from school and completely deprived of any educational or related services – certainly suffering irreparable harm as a result. Third, this Court's granting of preliminary relief would not result in irreparable harm to Mt. Olive. Finally, granting the injunction is certainly in the public interest, as it enforces the rights of a student with disabilities to receive services from his local educational agency. *See*, *e.g.*, *P.C. Yonkers, Inc.* v. *Celebrations the Party & Seasonal Superstore, LLC*, 428 F.3d 504, 508 (3d Cir. 2005) (stating that a court may grant a preliminary injunction if "(1) the plaintiff is likely to succeed on the merits; (2) denial will result in irreparable harm to the plaintiff; (3) granting the injunction will not result in irreparable harm to the defendant; and (4) granting the injunction is in the public interest").

(E.D. Pa. 2010) ("if Parent shows that a change in placement has occurred, this Court's narrow inquiry is limited to identifying the proper stay-put placement.").

### III.  T.C.'s "Current Educational Placement" is in the General Education Classroom with Extensive Supports and Related Services

A student's current educational placement is determined based on "the operative placement actually functioning at the time the dispute first arises"—that is, the placement indicated in the IEP. *Drinker*, 78 F.3d at 867 (citing *Thomas* v. *Cincinnati Bd. of Educ.*, 918 F.2d 618, 625-26 (6th Cir. 1990)); *see also Woods* v. *N.J. Dep't of Educ.*, No. 93-5123 (ERB), 20 IDELR 439, 440 (3d Cir. Sept. 17, 1993) ("the dispositive factor in deciding a child's 'current educational placement' should be the Individualized Education Program ("IEP") . . . actually functioning when the 'stay put' is invoked"); *W.R.* v. *Union Beach Bd. of Educ.*, No. 09-2268 (MLC), 2009 WL 4042715 at *7 (D.N.J. Nov. 19, 2009) (looking to the "last functioning IEP before [the] dispute arose" to determine the student's "current educational placement").

The present dispute first arose on April 10, 2012, when Plaintiffs brought a petition for due process to challenge Mt. Olive's proposal to graduate T.C. from high school and terminate his special education and related services. At that time, T.C.'s operative IEP was the October 2011 IEP. As discussed above, T.C.'s October 2011 IEP provided that T.C. was eligible for special education and related services under the category of "Autistic," and placed T.C. in a general education

13

program with a study skills class in the resource center, in-class support, speech language therapy, ABA therapy, and an individual aide. Therefore, T.C.'s current educational placement would have him continuing to receive such special education and related services. Of course, as set forth above, T.C.'s Stay-Put placement must reflect his current academic, developmental and functional needs. Because more than two years have passed since T.C.'s most recent IEP, his IEP necessarily must be revised accordingly so as to ensure that he is receiving FAPE.

Therefore, Mt. Olive must immediately assume responsibility for T.C.'s Stay-Put placement. Doing otherwise would amount to a unilateral graduation of a student with disabilities, and would render the Stay-Put provision meaningless.

## **CONCLUSION**

For the reasons set forth above, Plaintiffs respectfully request that the Court grant their application for a preliminary injunction implementing the Stay-Put provision under 20 U.S.C. § 1415(j), 34 C.F.R. § 300.518, and N.J.A.C. 6A:14-2.6(d)(1) and 2.7(u), by reversing T.C.'s "graduated" status and ordering Mt. Olive to reinstate and implement T.C.'s then-current educational placement for the pendency of T.C.'s IDEA judicial proceedings.

Dated:   New York, New York
         December 27, 2013

> Respectfully submitted,
>
> PAUL, WEISS, RIFKIND, WHARTON &
> GARRISON LLP
>
> By: _____
>   Jenna S. Harris (jharris@paulweiss.com)
>   1285 Avenue of the Americas
>   New York, New York  10019-6064
>   Tel.  (212) 373-3879
>   Fax.  (212) 492-0879
>
> EDUCATION LAW CENTER
>
>   Ruth Deale Lowenkron (rlowenkron@edlawcenter.org)
>   60 Park Place, Suite 300
>   Newark, N.J.  07102
>   Tel.  (973) 624-1815
>   Fax.  (973) 624-7339
>
>
> *Attorneys for Plaintiffs*
> *D.C. o/b/o T.C. and D.C.*

15