# SCHENCK PRICE SMITH & KING, LLP
ATTORNEYS AT LAW
~ Founded 1912 ~

ROBIN S. BALLARD
Admitted in NJ and PA
Direct Line: (973) 631-7844
Email: rsb@spsk.com

220 Park Avenue
PO Box 991
Florham Park, NJ 07932
Telephone: 973-539-1000
Fax: 973-540-7300

www.spsk.com

January 7, 2014

**VIA ELECTRONIC FILING & REGULAR MAIL**
Honorable Katharine S. Hayden, U.S.D.J.
United States District Court
M.L. King, Jr. Federal Bldg. & U.S. Courthouse
50 Walnut St.
Newark, New Jersey 07102

RE: **D.C. o/b/o T.C. v. Mount Olive Township Board of Education**
**Docket No. 2:12-cv-05592**

Dear Judge Hayden:

As Your Honor is aware, this office represents defendant Mount Olive Township Board of Education (hereinafter "Board" or "District") in the above-referenced matter. Please accept this letter brief in lieu of a more formal brief and in opposition to plaintiff's application for a Preliminary Injunction.

Plaintiff, T.C., completed twelfth grade in the 2011-2012 school year and was graduated from Mount Olive Township High School on June 21, 2012. This action occurred in accordance with a final decision rendered following a plenary hearing in the underlying due process proceedings, which were dismissed with an order that T.C. be graduated as planned. See June 15, 2012 Decision of the Honorable Mumtaz Bari-

{01370684.DOCX;1 }

Brown, A.L.J. ("ALJ"), attached to the Declaration of Jenna Statfeld Harris ("Harris Declaration") as part of **Exhibit C**[1].

T.C. participated in graduation on June 21, 2012 and received a diploma from the Mount Olive Township Board of Education. Plaintiff filed the above-referenced civil action on September 6, 2012, seeking to overturn the decision of the ALJ. The complaint was served on defendant on October 3, 2012. Plaintiff filed a motion for summary judgment on May 3, 2013. Defendant opposed that motion on May 28, 2013, and plaintiff replied on June 4, 2013.

Now, over six months after all briefs have been submitted for the motion that will resolve this case and eighteen months after T.C. graduated, plaintiff asks Your Honor for a stay-put order reversing T.C.'s status as a graduated student and ordering the Board to return T.C. to his educational placement from the 2011-2012 school year. For the reasons set forth below, plaintiff's application must be denied.

FRCP 65 provides that Your Honor may combine a request for a preliminary injunction with the underlying case. As the motion for summary judgment that will decide this case has been fully briefed, we respectfully request that Your Honor combine this application with the outcome of the matter on the merits.

## STATEMENT OF FACTS

T.C. was born on April 16, 1993, and was classified as eligible for special education and related services under the category of Autistic while he was attending school. T.C. attended Mount Olive High School, primarily attending general education classes with supports through Individualized Education Program (IEPs), including an individual aide, speech/language therapy, Applied Behavior Analysis therapy and occupational therapy. His most recent IEP, for twelfth grade, was prepared in October of 2011. That IEP noted that it was anticipated that T.C. would graduate in June of 2012. Plaintiff challenged that IEP through a

---

[1] Many of the exhibits attached to the Harris Declaration have handwriting on them, which we respectfully submit should not be considered by the Court.
{01370684.DOCX;1 }

Petition for Due Process, dated March 7, 2012. A formal notice of graduation was sent to T.C. on March 27, 2012. Plaintiff amended her Petition for Due Process to include a challenge to T.C.'s graduation on May 9, 2012, after the consideration period for that change in placement had expired.

A plenary due process hearing was conducted, which resulted in the decision from the ALJ attached to Harris Declaration as part of **Exhibit C**. In accordance with that order, T.C. was graduated from Mount Olive High School on June 21, 2012. He participated in the graduation ceremony.

On September 6, 2012, Plaintiff subsequently filed the underlying civil action for this matter, seeking to overturn the decision of the ALJ. Defendant learned of this appeal on October 3, 2012, when plaintiff's counsel forwarded a copy of the complaint to defendant's counsel via electronic mail. The complaint did not request that the Board provide T.C. with educational services while the appeal was pending. Indeed, plaintiff did not make a request to the Board that T.C. be provided with services until December 20, 2012. In the letter from plaintiff's counsel, she clearly notes that T.C. had not sought services through stay-put. See letter from plaintiff's counsel dated December 20, 2012, attached to Harris Declaration as **Exhibit A**.

Thereafter, plaintiff's counsel asked the Office of Special Education to enforce T.C.'s right to stay put, claiming that such right arose from the ALJ's decision and complaining that T.C. had been denied services by defendant for the entire 2012-2013 school year. See letter from plaintiff's counsel to John Worthington dated January 18, 2013, attached to Harris Declaration as part of **Exhibit C**. Mr. Worthington informed plaintiff's counsel that her complaint would be opened as a request for a complaint investigation, which would be held in abeyance pending the outcome of this civil action. See letter from Mr. Worthington to plaintiff's counsel dated March 14, 2013, attached to Harris Declaration as **Exhibit D**.

On April 4, 2013, plaintiff's counsel confirmed for the Office of Special Education that T.C.'s right to stay put was not the subject of the appeal and maintained that it was not part of this action. See letter from

{01370684.DOCX;1 }

plaintiff's counsel to Dolores Walther dated April 4, 2013 attached to Harris Declaration as part of **Exhibit I**. Mr. Worthington wrote to plaintiff's counsel on April 12, 2013, unequivocally informing her that there was nothing in the ALJ's decision with respect to stay-put for the Office of Special Education to enforce. Moreover, he explicitly wrote that if the need for educational services for T.C. pending the outcome of the appeal was emergent, as she contended, she could petition the district court for such relief. See letter from Mr. Worthington to plaintiff's counsel dated April 12, 2013, attached to Harris Declaration as **Exhibit J**.

Almost seven months after receipt of that letter, plaintiff's counsel again asked the District to provide services to T.C. under a claim of stay put, however, in the letter specifically asserted that "T.C.'s stay put setting cannot be in Mt. Olive High School." See letter from plaintiff's counsel to defendant's counsel dated November 4, 2013, attached to Harris Declaration as **Exhibit K**.

On December 27, 2013, plaintiff filed the instant motion seeking a preliminary injunction to reverse T.C.'s status as a graduated student and have the Board reinstate T.C.'s then-current educational placement pending the outcome of the underlying civil action, claiming that the situation is emergent for T.C.

## LEGAL ARGUMENT

### POINT I

### T.C. IS NOT ENTITLED TO STAY-PUT EDUCATIONAL SERVICES PENDING THE OUTCOME OF THIS ACTION

From the outset, the timing of plaintiff's motion for a preliminary injunction renders the theory of stay-put inapplicable. T.C. graduated from high school on June 21, 2012 and received his diploma at the ceremony, in which he participated. T.C.'s graduation proceeded as scheduled, pursuant to the ALJ's decision which ordered same, given that she found he had met graduation criteria. See **Exhibit C**, attached to Harris Declaration. An appeal was filed on September 6, 2012 that **did not request services through stay**

{01370684.DOCX;1 }

**put during judicial proceedings.** The District was informed of the appeal on October 3, 2012. Again, plaintiff made no request for services for T.C. The first claim of T.C. asserting his "right to stay-put" came by letter from his attorney, six months after graduation, on the last day of school prior to the holiday break in December of 2012. Over one year later, plaintiff files this motion for a preliminary injunction, when the judicial proceedings are virtually complete, with all necessary briefs having been submitted more than six months prior, and just awaiting a decision from Your Honor.

In her request for a preliminary injunction, plaintiff seeks to have T.C.'s status as a graduated student overturned and to have him provided educational services while this appeal is pending. From the outset, T.C.'s status is separate and apart from his asserted claim to educational services pending the outcome of this appeal. The reversal of T.C.'s status is potentially available, if at all, following the conclusion of the appeal, should Your Honor rule in plaintiff's favor.

Throughout her papers, plaintiff contends that T.C. is entitled to educational services based upon the theory that the right to stay put functions as an automatic injunction. In support of this position, plaintiff relies upon case law that is inapposite to the matter at hand.

Many of the cases do not apply to this situation in the slightest because they deal with school-aged children who are clearly entitled to educational services while a dispute is pending. R.S. and M.S. o/b/o D.S. v. Somerville Bd. of Educ., 2011 U.S. Dist. LEXIS 748 (D.N.J.) (student was in eleventh grade); R.B. v. Mastery Charter Sch., 2013 U.S. App. LEXIS 15594 (3d Cir.) (student was nineteen years old and had not graduated from high school); Anchorage Sch. Dist. v. M.P., 689 F.3d 1047 (9th Cir. 2012) (student was in third grade when dispute arose).

Two of the cases cited by plaintiff involve students who had graduated from high school. Those cases are inapplicable to this matter as well, because in each of those cases, following the conclusion of

administrative proceedings denying their requests to stop graduation, the students immediately and affirmatively sought educational services from their districts, either by requesting voluntary provision of services or by seeking a preliminary injunction. In both those cases, attempts were made to obtain educational services for the students within a few weeks of learning that the legal proceedings concluded, with determinations made that the students should graduate as proposed.

For example, in B.A.W. v. East Orange Bd. of Educ., 2010 U.S. Dist. LEXIS 90544 (D.N.J. 2010), after the ALJ denied B.A.W.'s attempt to stop his graduation through a request for emergent relief in June and dismissed the petition for due process seeking the same relief, a motion for a preliminary injunction to maintain the student's educational placement was filed early in August, simultaneously with the appeal of the ALJ's decision. This provided the Board with notice, prior to the beginning of the school year, that B.A.W. desired to continue receiving educational services while the appeal was pending.

Similarly, in the matter of Cronin v. East Ramapo Central Sch. Dist., 689 F. Supp. 197 (S.D.N.Y. 1988), within 16 days of the denial of the request to stop the student's graduation, a request was made for the student to continue receiving educational services through the pendency of the appeal proceedings at the state level. The first appeal was denied, after which the matter was appealed to the United States District Court with a request for a preliminary injunction being filed two days later, seeking to reinstate educational services for the student. Id. The school district thus was put on notice throughout the appeals process that the student unequivocally wanted educational services while the appeal was pending.

In certain situations, plaintiff correctly noted that courts at times do not require the moving party to meet all elements for a preliminary injunction in matters involving stay put, to ensure continuity of educational services for students. This is based upon the IDEA's purpose of preventing schools from

unilaterally removing a student from his education over the parent's objection while review proceedings are completed. Drinker v. Colonial Sch. Dist., 78 F.3d 859 (3d Cir. 1996) (internal citations omitted).

However, in this case, T.C. has not participated in educational programming since June 21, 2012, when he received his diploma while participating in his high school's graduation ceremony, pursuant to the order issued by the ALJ in this matter. This was done with his parent's consent and approval, as she took no action to challenge the change in placement for T.C. until the filing of this motion, eighteen months after T.C. graduated from high school and fifteen months after she filed the instant action. Under these circumstances, there is no automatic right T.C. has to reinstatement of educational services using a "stay-put" theory.

The right to stay-put depends upon the timing of the filing of the challenge to the proposed change for the special education student. The New Jersey Administrative Code provides parents with 15 days to review written notice from the District. If the parent does not request mediation or due process to challenge the determination for which written notice was provided within that 15 day period, the action proposed by the district goes into effect. N.J.A.C. 6A:14-2.3.

In this matter, plaintiff was provided written notice of the District's intent to graduate T.C. in June of 2012 for years. Notice of this intended graduation was included in each of his IEPs for high school, including the most recent IEP dated October 2011. Plaintiff did not challenge that IEP in a timely manner to stop its implementation, as she did not request due process until March 27, 2012. Even then, within that Petition, she did not raise a claim that the District was inappropriately intending to graduate T.C. in June of 2012.

Plaintiff was sent further written notice on March 27, 2012 of the District's intent to graduate T.C. in June of 2012 Again, she did not file a timely challenge to that notice, as she did not amend her due process petition to include that issue until May 9, 2012,which was more than 15 days after the notice was provided.

{01370684.DOCX;1 }

The ALJ conducted a full due process hearing and rendered a decision on June 15, 2012, ordering that T.C. was to be graduated as proposed by the District. In accordance with that decision and plaintiff's wishes, T.C. participated in his graduation ceremony on June 21, 2012 and received a diploma from the Mount Olive Township Board of Education.

Though plaintiff ultimately appealed the ALJ's decision on September 6, 2012, a plain reading of the complaint and the admission of plaintiff's counsel conclusively establish that she did not seek the provision of educational services for T.C. through that appeal. See **Exhibit I** attached to Harris Declaration. No request for educational services for T.C. was made at that time to the District either, nor was a concurrent preliminary injunction sought through this Court. Instead, plaintiff waited until the instant filing, fifteen months after the action was initiated and six months after all briefs on the motion for summary judgment, through which this matter will be decided, have been submitted. This delay in seeking services indicates plaintiff's agreement with T.C.'s graduation, though she has not explicitly signed her agreement to same.

In New Jersey, signed parental consent is only required when a district seeks to evaluate a student, release records to outside parties and to implement an initial IEP for a student. N.J.A.C. 6A:14-2.3(a). Once consent has been provided for an IEP, with or without the parent's signature, proposed actions regarding classified students become effective after the parent has had 15 days to consider the proposal. Id. at (h). As explained in detail above, plaintiff had written notice of T.C.'s intended graduation in June of 2012 from October of 2011, at the latest. She did not challenge that decision in the due process petition she filed months after the IEP of October 2011 went into effect. She also did not challenge the separate written notice of graduation in a timely manner to prevent it from going into effect.

Plaintiff's request runs counter to the intent of stay-put. The whole purpose of stay-put is to avoid interruption of a student's educational program, pending the outcome of a dispute between the parent and the

{01370684.DOCX;1 }

district. Drinker, Supra. In this matter, the dispute was litigated through due process proceedings that resulted in a decision from the ALJ on June 15, 2012. **Exhibit C** attached to Harris Declaration. T.C. participated in his graduation ceremony on June 21, 2012 and received a diploma from the Mount Olive Township Board of Education.

At the beginning of the 2012-2013 school year, defendant was completely unaware that there was a continuing dispute regarding T.C. Defendant did not receive notice of the appeal of the ALJ's decision until October 3, 2012. By her own admission, plaintiff did not seek to stay-put educational services for T.C. when she filed the appeal of the ALJ's decision. **Exhibit A** attached to Harris Declaration. The appeal itself does not ask for services for T.C. through the conclusion of the proceedings, and plaintiff requested services for the first time in December of 2012, six months after T.C. graduated. By that time, T.C. had no current educational placement functioning to effectively stay-put. To put him in programming then would have disrupted the status quo, as he had not been in school for six months at that time.

Plaintiff sought to stay-put services through the Office of Special Education through an enforcement action. **Exhibit C** attached to Harris Declaration. She was told that there was no part of the ALJ's decision that could be enforced to give T.C. stay-put services and was told unequivocally in April of 2013 that if she thought there was an emergent need for services, she needed to seek same in the District Court. **Exhibit K** attached to Harris Declaration. Despite this, plaintiff took no action.

Instead, plaintiff made a second request for services, almost one year later, through which she makes it clear that while she wants educational services for T.C. paid for by the Board, she is not asking for his prior placement to be stay-put. There can be no doubt that the last agreed-to placement prior to graduation was Mount Olive High School. Yet, plaintiff's request of December 2013 reads: "T.C.'s stay put setting cannot be in Mt. Olive High School." See **Exhibit K** attached to Harris Declaration. Purportedly, this is due

{01370684.DOCX;1 }

to T.C.'s needs having changed, yet plaintiff has provided absolutely no documentation of these alleged changes.

There can be no doubt that by the time plaintiff made the first request for educational services, T.C.'s status quo was as a graduated student. Plaintiff only has taken affirmative action to seek such services now, fifteen months after filing the appeal and eight months after having claimed this was an emergent situation, when the parties are only awaiting a decision on the dispositive motion that will resolve it.

In summary, plaintiff's request for stay-put is not supported by the facts of this case. Plaintiff asserts that T.C. must be provided with services immediately to avoid irreparable harm. Nevertheless, the instant application was not filed until eighteen months after T.C.'s graduation. Plaintiff's cries of urgency ring hollow. There is simply no need for a preliminary injunction at such a late stage of the proceedings.

## POINT II

### T.C.'S REQUEST FOR STAY PUT SERVICES WILL BE MOOT WHEN HE TURNS 21

Assuming for the sake of argument that this Court were to find that T.C. has stay-put rights and should be returned to his prior program at Mount Olive High School, returning him to that setting would be extremely disruptive to him. T.C. would be resuming school attendance after having been out for all of the 2012-2013 school year and after half of the 2013-2014 school year had passed.

Moreover, the potential entitlement to educational services through a stay-put theory for students who have graduated only extends to the conclusion of the school year in which the student reaches the age of 21. "A free appropriate public education is available to all children with disabilities residing in the State **between** the ages of 3 and 21, inclusive . . . ." 20 U.S.C. § 1412 (emphasis added). "The IDEA requires that a free appropriate education be available for all handicapped children **between** the ages of three and twenty-

{01370684.DOCX;1 }

one consistent with state law or practice." Hilden v. Lake Oswego School District, 1994 U.S. Dist. LEXIS 13637 (D. Or. 1994); see also Bd. of Educ. of Oak Park & River Forest High Sch. Dist. 200 v. Ill. Bd. of Educ., 79 F.3d 654 (7th Cir. 1996).

T.C. reaches the age of 21 in a few months, in April of 2014. Thus, his potential entitlement to services through a stay-put theory expires at the end of the 2013-2014 school year, if no decision on the merits has been rendered by that time. This would create a significant lack of continuity for T.C., which is exactly what IDEA seeks to avoid. See Drinker, supra. This was also a concern of the Cronin court, which resulted in the case being placed on an expedited track to avoid the disruptions for the student. See Cronin, supra.

In Hilden v. Lake Oswego School District, 1994 U.S. Dist. LEXIS 13637 (D. Or. 1994), Thomas Hilden was a student in the Lake Oswego School District. During the summer of 1994, the district provided him with an Extended School Year program. The district refused to readmit Hilden for the 1994-1995 school year. When they were informed that he would not be readmitted, his parents filed a due process petition. Shortly thereafter, they filed for a preliminary injunction with the United States District Court in Oregon. They alleged that the district's refusal to readmit their son violated the stay put requirement of IDEA. They also sought a temporary restraining order requiring the district to return their son to school pending the outcome of the due process hearing.

The court refused to order stay put, recognizing the futility of readmitting a student who would shortly be ineligible for services because of his age.

> While the right under the "stay put" requirements of 20 U.S.C. § 1415(e)(3) [now § 1415(j)] does not depend upon the merits or lack thereof of the issues presented by the handicapped student in the due process proceedings, the right to continue to receive special education services does depend upon the continuing entitlement of the handicapped student to receive a public special education.

>Id. at p. 5.

Accordingly, because Hilden would soon be ineligible for services because of his age, the court determined that his stay put application was effectively moot. Likewise, this court should recognize that T.C.'s reinstatement as a student in the Mount Olive school district at this late stage of the proceedings is equally futile, as the issue of his eligibility for services will soon be moot.

> It is well settled that Article III of the Constitution requires that any cause of action before a federal court must involve a live case or controversy. DeFunis v. Odegaard, 416 U.S. 312, 316, 94 S. Ct. 1704, 40 L. Ed. 2d 164 (1974). Mootness occurs "when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome."
>
> Powell v. McCormack, 395 U.S. 486, 496, 89 S. Ct. 1944, 23 L. Ed. 2d 491 (1969).

Stated simply, if reinstatement as a student was so important to plaintiff, she would have requested stay put services immediately after T.C.'s graduation and requested a preliminary injunction with the filing of her appeal, if that request were denied. Instead, she waited 18 months.

Moreover, plaintiff never specifically asks that T.C. be reinstated as a student at Mount Olive High School. This raises the suspicion that there is some ulterior motive afoot, and that plaintiff will seek to have the district pay for some alternative placement if this court grants the preliminary injunction. Plaintiff's brief notes that "[b]ecause more than two years have passed since T.C.'s most recent IEP, his IEP necessarily must be revised accordingly so as to ensure that he is receiving FAPE." See Plaintiff's December 27, 2013 Brief, p. 14. Beyond the idea that T.C.'s IEP would need to be revised being inconsistent with the IDEA, this statement reveals that plaintiff's true motive is to use T.C.'s possible reinstatement as a student as a platform to request a panoply of other services on the eve of his twenty-first birthday that are similar to those sought as relief through the underlying appeal in this matter.

This court should recognize that T.C. is about to lose his potential eligibility for stay-put services through the IDEA and simply rule upon the merits of plaintiff's appeal. Alternatively, under F.R.C.P. 65(a)(2), the court can consolidate the hearing of plaintiff's motion for a preliminary injunction with the hearing of plaintiff's motion for summary judgment. By granting plaintiff's application for a preliminary injunction, the court will merely encourage plaintiff's last minute gamesmanship, and further prolong the ultimate resolution of this matter.

## POINT III

## PLAINTIFF HAS NOT DEMONSTRATED A LIKELIHOOD OF SUCCESS OR A POSSIBILITY OF IRREPARABLE HARM

As set forth above, this court must apply a "traditional preliminary injunction analysis" in determining whether to enter a stay-put order. M.K., 2006 U.S. Dist. LEXIS 79726 at p. 21, (quoting Johnson, 287 F.3d at 1180); see also Pardini v. Allegheny Intermediate Unit, 420 F.3d 181, 188 (3d Cir. 2005) (agreeing with the holding and reasoning in Johnson).

### A. IRREPARABLE HARM

Plaintiff has not in any way demonstrated that T.C. will suffer any sort of harm, let alone irreparable harm, if his graduation status is not overturned and he is not returned to Mount Olive High School immediately. To award emergent relief, the requested remedy must be necessary to prevent "substantial, immediate and irreparable harm." Subcarrier Communications, Inc. v. Daycomm, Inc., 299 N.J. Super. 634, 638 (1997) quoting Citizens Coach Co. v. Camden Horse R.R. Co., 29 N.J.Eq. 299, 303-304 (E.&A. 1878). The type of harm present must not be able to be addressed by legal or equitable remedy following the hearing. The emergent relief must be the only way of protecting the plaintiff from harm. Instant Air Freight Co. v. C.F. Air Freight, Inc., 882 F.2d 797 (3d Cir. 1988.

{01370684.DOCX;1 }

In her request for a stay-put order, plaintiff claims that the District unilaterally terminated T.C.'s educational program. For reasons that will be addressed more fully below in the likelihood of success section, this is not accurate.

As plaintiff provides nothing beyond her personal beliefs and speculation to support her claim that T.C. will suffer irreparable harm if he is not returned to school immediately, eighteen months after graduation and fifteen months after filing the appeal, she has failed to demonstrate the existence of such harm.

### B. LEGAL RIGHT UNDERLYING THE CLAIM/LIKELIHOOD OF SUCCESS ON THE MERITS

As set forth above, plaintiff's claim that T.C. should not have graduated was the subject of a plenary due process hearing. Plaintiff had ample opportunity to present her case, and her petition was ultimately denied.

Moreover, as set forth in Point II, T.C. will turn 21 in April. This will render plaintiff's application moot, and thus plaintiff is unlikely to succeed on the merits.

Quite simply, plaintiff's legal right to the requested relief is not well-settled. Plaintiff's application for a preliminary injunction was not filed until **eighteen months after graduation**. T.C. is about to turn twenty-one and become ineligible for even potentially receiving services through IDEA under a stay-put theory. Accordingly, plaintiff has not demonstrated a likelihood of success on the merits.

### C. BALANCING OF THE INTERESTS

Lastly, when the interests of the parties are compared, it is evident that plaintiff has not demonstrated that any harm -- let alone irreparable harm -- will come to T.C. if he is not reinstated as a student at Mount Olive High School. On the other hand, if T.C. is reinstated as a student, harm would come to the Board. As

{01370684.DOCX;1 }

set forth above in Point II, it is becoming increasingly apparent that plaintiff's belated request for stay put is a thinly guised ruse to seek additional services pursuant to a revised IEP. To require the Board to begin providing new services eighteen months after graduation, and on the eve of T.C.'s twenty-first birthday, would require the district to divert resources from other students.

To reinstate plaintiff would also set a dangerous precedent that would disrupt well-established practices for graduating students who have met the necessary requirements for graduation. It would further encourage gamesmanship as students approach their twenty-first birthdays.

Accordingly, the balancing of the interests weighs heavily in favor of the Board. As such, plaintiff's request for a stay put order must be denied.

## CONCLUSION

For the reasons set forth above, the Mount Olive Board of Education respectfully requests that Your Honor deny plaintiff's application for a preliminary injunction and a stay put order.

Respectfully submitted,
SCHENCK, PRICE, SMITH & KING, LLP

By: _____
JOHN D. MCCARTHY

By: _____
ROBIN S. BALLARD

cc: Jenna S. Harris, Esq.
Ruth Deale Lowenkron, Esq.

{01370684.DOCX;1 }