UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| D.C. o/b/o T.C. and D.C., <br><br>               Plaintiffs, <br><br> v. <br><br> MOUNT OLIVE TOWNSHIP BOARD OF EDUCATION, <br><br>               Defendant. | **Oral Argument Requested** <br><br> Civil Action No.: 2:12-cv-05592-KSH-CLW |

# MEMORANDUM OF LAW
# IN FURTHER SUPPORT OF PLAINTIFFS'
# MOTION FOR PRELIMINARY INJUNCTION

PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
Jenna Statfeld Harris, Esq.
1285 Avenue of the Americas
New York, NY  10019-6064
(212) 373-3879
jharris@paulweiss.com

EDUCATION LAW CENTER
Ruth Deale Lowenkron, Esq.
60 Park Place, Suite 300
Newark, NJ  07102
(973) 624-1815, ext. 21
rlowenkron@edlawcenter.org

*Attorneys for Plaintiffs D.C. o/b/o T.C. and D.C.*

## TABLE OF CONTENTS

Table of Authorities .................................................................................................. ii

PRELIMINARY STATEMENT ....................................................................................1

LEGAL ARGUMENT....................................................................................................2

I.    The Stay-Put Right is Automatic and Unequivocal .............................2

II.    T.C.'s Stay-Put Request is Not Moot......................................................5

III.    T.C.'s "Status Quo" Pursuant to the Right to Stay-Put is as a Student with Disabilities Entitled to Special Education Services, and Not as a Student Who Should be Excluded From School ..................................................................................................8

IV.    Plaintiffs Appropriately and Timely Challenged T.C.'s Graduated Status.................................................................................9

    A.    Plaintiffs Undeniably Challenged and Continue to Challenge Mt. Olive's Decision to Graduate T.C.......................9

    B.    Plaintiffs Timely Challenged T.C.'s Graduation ......................11

V.    The Stay-Put Placement Must Consider a Child's Current Needs ..................................................................................................12

VI.    The Preliminary Injunction Standard of Rule 65 Does Not Apply Here, But Plaintiffs Would Meet That Standard......................13

CONCLUSION............................................................................................................15

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*A.D.* v. *Hawaii Dep't of Educ.*,
  727 F.3d 911 (9th Cir. 2013) ...................................................................................3, 5

*Pardini* v. *Allegheny Intermed. Unit*,
  420 F.3d 181 (3d Cir. 2005)........................................................................................14

*Anchorage Sch. Dist.* v. *M.P.*,
  689 F.3d 1047 (9th Cir. 2012) ....................................................................................13

*B.A.W.* v. *E. Orange Bd. of Educ.*,
  No. 10-4039 (JLL), 2010 WL 3522096 (D.N.J. Aug. 31, 2010) ....................5, 11, 12

*Bd. of Educ. of Oak Park & River Forest High Sch.* v. *Illinois State Bd. of Educ.*,
  79 F.3d 654 (7th Cir. 1996) ......................................................................................7, 8

*C.T.* v. *Verona Bd. of Educ.*,
  464 F. Supp. 2d 383 (D.N.J. 2006) ..............................................................................6

*Carlisle Area Sch.* v. *Scott P.*,
  62 F.3d 520 (3d Cir. 1995)............................................................................................7

*Cronin* v. *Bd. of Educ. of E. Ramapo Cent. Sch. Dist.*,
  689 F. Supp. 197 (S.D.N.Y. 1988) ....................................................................4, 5, 13

*D.F.* v. *Collingswood Bd. of Educ.*,
  694 F.3d 488 (3d Cir. 2012).........................................................................................3

*Drinker* v. *Colonial Sch. Dist.*,
  78 F.3d 859 (3d Cir. 1996)..............................................................................3, 7, 9, 14

*E.R.K.* v. *Hawaii Dep't of Educ.*,
  728 F.3d 982 (9th Cir. 2013) .......................................................................................6

*Hilden* v. *Lake Oswego Sch. Dist. No. 7J*,
  No. 94-1117-FR, 1994 WL 519032 (D. Or. Sept. 20, 1994) ......................................8

*Honig* v. *Doe*,
  484 U.S. 305 (1988).......................................................................................................3

*Johnson* v. *Special Educ. Hearing Office*,
  287 F.3d 1176 (9th Cir. 2002) ....................................................................................13

*Lester H.* v. *Gilhool*,
    916 F.2d 865 (3d Cir. 1990) ............................................................................................ 7, 8

*M.K.* v. *Roselle Park Bd. of Educ.*,
    No. 06-4499 (JAG), 2006 WL 3193915 (D.N.J. Oct. 31, 2006) ............................................ 14

*R.B.* v. *Mastery Charter Sch.*,
    532 F. App'x 136 (3d Cir. July 25, 2013) ............................................................................. 9

*R.S. v. Somerville Bd. of Educ.*,
    No. 10-4215 (MLC), 2011 WL 32521 (D.N.J. Jan. 5, 2011) ................................................ 4

**STATUTES**

Individuals with Disabilities Education Act,
    20 U.S.C. § 1400, *et seq.* ..................................................................................................... 5
    20 U.S.C. § 1412(a)(1)(A) .................................................................................................... 6
    20 U.S.C. § 1415(j) ............................................................................................................... 5

N.J.S.A. § 18A:7C-5.2 (2008) ................................................................................................. 10

**OTHER AUTHORITIES**

Assembl. Educ. Comm., B. No. 2578, 312th Leg. (N.J. 2008) ................................................. 10

Fed. R. Civ. P. 65 ............................................................................................................... 13, 15

N.J.A.C. § 6A:14-1.3 .................................................................................................................. 6

N.J.A.C. § 6A:14-2.3(f) ............................................................................................................ 11

N.J.A.C. § 6A:14-2.3(h)(2) ....................................................................................................... 11

N.J.A.C. § 6A:14-2.3(h)(3)(i) ................................................................................................... 11

N.J.A.C. § 6A:14-2.3(h)(3)(ii) .................................................................................................. 11

## PRELIMINARY STATEMENT

Mt. Olive's Letter Brief to the Court ("Letter") ignores the statutes, regulations, legislative history, and case law that firmly establish T.C.'s right to Stay-Put pending the outcome of these proceedings. Mt. Olive proposes a new, unsupported, regulatory scheme designed to punish students with disabilities, though the Stay-Put right is intended to protect them. Thus:

- Mt. Olive argues that Plaintiffs waived T.C.'s Stay-Put right through purported delay. In fact, Plaintiffs have consistently sought to enforce the right since 2012, there is no statute of limitations for Stay-Put implementation, and any waiver of Stay-Put must be express.

- Mt. Olive argues that it would be "futile" to grant T.C.'s Stay-Put right because he will lose his right to special education "when he turns 21." In fact, the right to special education extends beyond age 21 where a student, like T.C., requires compensatory education.

- Mt. Olive argues, without any citation, that T.C.'s "status quo" is as a "graduated student" with no right to educational services. In fact T.C.'s "status quo" is as a student eligible for special education services.

- Mt. Olive argues that Plaintiffs did not timely challenge T.C.'s graduation, and that T.C.'s participation in his graduation ceremony precludes his Stay-Put right. In fact, T.C. timely challenged his graduation and his participation

1

in his graduation ceremony has no effect on his ungraduated status, pursuant to State law.

- Mt. Olive argues that T.C. cannot meet the standard for preliminary injunctions. In fact, T.C. can, but need not.

T.C. has made a valid claim to exercise his rights, and this Court should grant his application for an injunction.

## LEGAL ARGUMENT

### I. The Stay-Put Right is Automatic and Unequivocal

Plaintiffs' Motion for Preliminary Injunction (the "Motion") cited the cases that demonstrate that Stay-Put is automatically invoked upon the filing of a due process petition and remains in effect throughout the pendency of all appellate proceedings. Mt. Olive argues that because Plaintiffs' due process petition and Complaint do not use the words "Stay-Put," they do not constitute a request for T.C.'s Stay-Put right, and indeed work a waiver of Stay-Put. Whether or not Plaintiffs explicitly requested Stay-Put is beside the point, as Plaintiffs' filing of the due process petition and subsequent appeal necessarily triggered T.C.'s right to Stay-Put.

The Stay-Put provision is automatic, reflecting Congress' decision that children with disabilities, "regardless of whether their case is meritorious or not, are to remain in their current educational placement until the dispute with regard to

their placement is ultimately resolved." *Drinker* v. *Colonial Sch. Dist.*, 78 F.3d 859, 864-65 (3d Cir. 1996). The purpose of the provision is clear: "Congress very much meant to strip schools of the *unilateral* authority they traditionally employed to exclude disabled students . . . from school." *Honig* v. *Doe*, 484 U.S. 305, 323 (1988) (emphasis in original). There is no requirement to use the words "Stay-Put" in a due process petition or subsequent appeal. Rather, the Stay-Put provision functions "in essence, as an automatic preliminary injunction," *Drinker*, 78 F.3d at 864-65, and it is "triggered" by "filing the [due process] petition." *D.F.* v. *Collingswood Bd. of Educ.*, 694 F.3d 488, 492 (3d Cir. 2012). Stay-Put need not be explicitly requested because it is "effective from the date a student requests an administrative due process hearing." *A.D.* v. *Hawaii Dept. of Educ.*, 727 F.3d 911, 915 (9th Cir. 2013).

Reflecting the same policy judgment, Stay-Put may be waived only expressly. As the Third Circuit noted, there is nothing in the case law even "suggesting that parents can lose their stay put protection except by affirmative agreement to give it up." *Drinker,* 78 F.3d at 868. Thus, Mt. Olive's repeated assertions that T.C. waived his rights through delay (Letter at 4, 7, 10), are wrong as a matter of law. Mt. Olive is also wrong as a matter of undisputed fact: Mt. Olive concedes that Plaintiffs have sought to enforce T.C.'s Stay-Put right in many ways since 2012, through multiple written requests to Mt. Olive, and through

3

extensive correspondence with the New Jersey Department of Education, Office of Special Education Programs ("NJDOE"). (Letter at 3-4.) That Plaintiffs exhausted those avenues before seeking this Court's intervention, so as not to unnecessarily drain judicial resources, cannot be held against T.C. under controlling law.[1]

Mt. Olive attempts to conjure a statute of limitations for Stay-Put by citing two cases in which Stay-Put rights were granted to students who made requests shortly after receiving notice of their proposed graduations. *See* Letter at 6, citing *B.A.W.* v. *E. Orange Bd. of Educ.*, No. 10-4039 (JLL), 2010 WL 3522096 (D.N.J. Aug. 31, 2010); *Cronin* v. *Bd. of Educ. of E. Ramapo Cent. Sch. Dist.*, 689 F. Supp. 197 (S.D.N.Y. 1988). It is true that the intervals in those cases were shorter, but neither case so much as comments on those intervals, much less predicates its decision on their brevity. There is no case establishing a maximum time limit. In fact, the opposite is true: "The fact that school years come and go while the litigation is pending . . . does not obviate the injunctive effect of the stay put provision as interpreted in our courts." *R.S.* v. *Somerville Bd. of Educ.*, No. 10-4215 (MLC), 2011 WL 32521, at *11 (D.N.J. Jan. 5, 2011). The Ninth Circuit described the length of time between a district's notice of a change in placement

---

[1] Mt. Olive notes that nearly a year ago, Plaintiffs advised NJDOE that Stay-Put was not specifically the subject of this appeal. (Letter at 3.) That was true, then. It is no longer true, and as a matter of law it is of no significance.

4

and the student's formal Stay-Put request as "<u>irrelevant</u>." *A.D.*, 727 F.3d at 915 (emphasis added).

Mt. Olive also laments its supposed lack of "notice" that T.C. wanted to receive educational services pending the resolution of the current proceedings. (Letter at 6, 7, 9.)  This is untrue: Mt. Olive was put on actual notice through Plaintiffs' requests for enforcement to Mt. Olive and NJDOE.  It was put on constructive notice by the statute <u>requiring</u> it to provide Stay-Put rights pending the outcome of proceedings like this. 20 U.S.C. § 1415(j).  And it was put on notice by the very cases it now cites.  In *B.A.W.*, 2010 WL 3522096 at *4, this Court was confronted with virtually the same circumstances presented by the case at bar, and it held that the filing of a due process request challenging graduation triggers the Stay-Put provision.   Similarly, the court in *Cronin* held that contesting graduation through due process "<u>triggers</u> all of the procedural protections" of the Individuals with Disabilities Education Act, 20 U.S.C. § 1400, *et seq.* ("IDEA"), including the Stay-Put provision. *Cronin*, 689 F. Supp. at 203 (emphasis added).

## II.    T.C.'s Stay-Put Request is Not Moot

Mt. Olive argues that it would be "futile" and "disruptive" for T.C. to receive services pursuant to the Stay-Put provision, and that educating him would "create a significant lack of continuity for T.C.," somehow rendering his request "moot." (Letter at 7, 11, 12.)  That is, having failed at its statutory obligations for

5

this long, Mt. Olive claims that to do the right and legal thing now would harm T.C. Respectfully, we disagree, and in any event, that is Plaintiffs' choice to make, not Mt. Olive's.

To support the plea that it is too late to do what the law requires, Mt. Olive suggests that T.C. will no longer be entitled to IDEA services "when he turns 21." (Letter at 10.) That is wrong. IDEA applies to students "between the ages of 3 and 21, inclusive." 20 U.S.C. § 1412(a)(1)(A) (emphasis added). A student is entitled to a free and appropriate public education ("FAPE") under IDEA at least until the end of the school year in which he or she turns 21. N.J.A.C. § 6A:14-1.3; *see also C.T.* v. *Verona Bd. of Educ.*, 464 F. Supp. 2d 383, 385-86 (D.N.J. 2006) (this Court was "instructed" by the Second Circuit's finding that if the word "inclusive" is "to mean something, as it must," it means that the relevant period "ends on the last day of [the child's] 21st year.").[2]

Moreover, students with disabilities who seek compensatory educational services, as T.C. seeks, may receive those services beyond the end of the school year in which they turn 21 "to compensate for deprivations of that right [to FAPE] before the student turned twenty-one." *Carlisle Area Sch.* v. *Scott P.*, 62 F.3d 520, 536 (3d Cir. 1995); *see also Lester H.* v. *Gilhool*, 916 F.2d 865, 872 (3d Cir. 1990). Notably, the Seventh Circuit case cited by Mt. Olive also states that

---

[2] *See also E.R.K.* v. *Hawaii Dept. of Educ.*, 728 F.3d 982 (9th Cir. 2013) (holding that students with disabilities are entitled to IDEA services up until their 22nd birthday).

compensatory education is a "benefit that can extend beyond the age of 21." *Bd. of Educ. of Oak Park & River Forest High Sch.* v. *Illinois State Bd. of Educ.*, 79 F.3d 654, 659-60 (7th Cir. 1996). Plaintiffs requested compensatory education in the underlying proceeding. Because the right to compensatory education extends beyond T.C.'s 21st birthday, and because the Stay-Put right continues "until the dispute with regard to [the student's] placement is ultimately resolved," *Drinker*, 78 F.3d at 868, T.C. must receive Stay-Put services even if he reaches his 21st birthday while the litigation regarding compensatory education is pending. Any other result would defeat the purpose of Stay-Put—to provide continuity for a student with disabilities during lengthy legal proceedings. *See, e.g.*, *Drinker*, 78 F.3d at 868. Mt. Olive cites no law to support any other outcome, nor are Plaintiffs aware of any such law.

Mt. Olive argues that T.C. should lose his right to Stay-Put because he is <u>almost</u> 21. Mt. Olive cites *Oak Park* (Letter at 11), but that case creates no such rule. There, the student was not awarded additional services as he had "already received benefits in excess of what [he was] entitled to," precisely because he—unlike T.C.—had received Stay-Put services while the litigation was pending. *Oak Park*, 79 F.3d at 660. The outcome had nothing to do with the student's age.[3]

---

[3] This matter is similarly distinguishable from *Oak Park* and the only other case cited by Mt. Olive on this point (Letter at 11), because Plaintiffs brought the due process petition in the underlying complaint seeking compensatory services when T.C. was only 18 years old. In

Even if the Stay-Put provision did cease to apply at the end of the school year in which T.C. turned 21, Mt. Olive would remain obligated at least until that day. The Third Circuit has explicitly rejected arguments that courts may deny relief requested under IDEA on the basis that the child has reached, or will soon reach, the age of 21, stating:

> If *Honig* stands for the proposition defendants assert [to deny equitable relief to students over age 21], school districts would be immune from suit if they simply stopped educating intended beneficiaries of [IDEA] at age 18 or 19. Those beneficiaries' cases would take at least two years to be reviewed, and even if the reviewing courts found the school districts' behavior egregious, the courts would be powerless to aid the intended beneficiaries because those beneficiaries would now be over age 21. We cannot believe that either Congress or the Supreme Court meant to allow a school district to withhold a disabled minor's educational rights at age 18 or 19 without remedy.

*Lester H.*, 916 F.2d at 872.

### III. T.C.'s "Status Quo" Pursuant to the Right to Stay-Put is as a Student with Disabilities Entitled to Special Education Services, and Not as a Student Who Should be Excluded From School

The Stay-Put right maintains the "status quo" of a student with disabilities, as determined by the Individualized Education Program ("IEP") in place "at the time the dispute first arises." *Drinker* at 867; *see also R.B.* v. *Mastery Charter Sch.*, 532 F. App'x 136, 140 (3d Cir. 2013).

---

*Oak Park*, the parents initiated proceedings three weeks before the student's 21st birthday, *Oak Park*, at 656-57, while in *Hilden* v. *Lake Oswego Sch. Dist. No. 7J*, No. 94-1117-FR, 1994 WL 519032, at *1 (D. Or. Sept. 20, 1994), the parents requested due process three months before the student's 22nd birthday.

Mt. Olive attempts to turn the Stay-Put provision on its head by arguing that the "status quo" for T.C. is that he is a "graduated student" and should be excluded from school. (Letter at 10.) Mt. Olive cites no law for this notion, and we have found none. To credit this argument is to license a school district to deny Stay-Put services for long enough, so that by the time the student's matter is heard by a court, the student's "status quo" would already have been transformed into one that requires no education. The entire regulatory scheme exists to ensure the opposite outcome, and to provide education to students with disabilities.

### IV. Plaintiffs Appropriately and Timely Challenged T.C.'s Graduated Status

Contrary to Mt. Olive's claims (Letter at 3, 7), Plaintiffs both appropriately and timely challenged Mt. Olive's decision to graduate T.C. and have continued to challenge T.C.'s change in placement since their due process petition was filed. T.C.'s participation in his graduation ceremony has no bearing on his graduated status.

#### A. <u>Plaintiffs Undeniably Challenged and Continue to Challenge Mt. Olive's Decision to Graduate T.C.</u>

Not only did Plaintiffs challenge T.C.'s proposed graduation in April 2012, they continued to do so by appealing to this Court, by seeking Summary Judgment to reinstate T.C.'s status as "ungraduated," and by consistently pursuing

9

enforcement of T.C.'s right to Stay-Put from Mt. Olive, from NJDOE, and now, from this Court.

Mt. Olive's repeated assertions that D.C. agreed to, and even had "wishes" for, T.C.'s premature graduation (Letter at 7-8), are disingenuous. New Jersey law provides the opportunity for a student with disabilities who requires services beyond the four years of traditional high school to "participate in commencement ceremonies with his graduating class and to receive a certificate of attendance, provided that the student has attended four years of high school." N.J.S.A. § 18A:7C-5.2 (2008).  This law was enacted for students with disabilities who were not yet ready to graduate from high school, but who wanted to "join the friends and classmates with whom so many important childhood milestones have been shared in celebrating this poignant rite of passage." Assembl. Educ. Comm., B. No. 2578, 312th Leg. (N.J. 2008).   T.C. participated with his class in the graduation ceremony for these very reasons.  Mt. Olive's Letter states <u>five</u> times that T.C. accepted a diploma at graduation.  No amount of repetition can change what happened: T.C. did not accept a diploma at the graduation ceremony (Mt. Olive subsequently mailed it to him), T.C. did not agree to graduate, and T.C. timely and consistently challenged the graduation.

B.      Plaintiffs Timely Challenged T.C.'s Graduation

A school district must provide written notice to the parent when it proposes to change the educational placement of a student with disabilities, including a proposed graduation. N.J.A.C. § 6A:14-2.3(f); *see also B.A.W.*, 2010 WL 3522096 at *4. The district must provide "written notice at least 15 calendar days prior to the <u>implementation</u> of a proposed action so that parents may consider the proposal." N.J.A.C. § 6A:14-2.3(h)(2) (emphasis added). The district may implement the proposed action <u>unless</u> the parent requests mediation or due process. N.J.A.C. § 6A:14-2.3(h)(3)(i). Furthermore, if the request is made "prior to the expiration of the 15th calendar day" described above—that is, the date of the proposed action—the district "shall delay the implementation of the proposed action" pursuant to the Stay-Put provision. N.J.A.C. § 6A:14-2.3(h)(3)(ii).

Mt. Olive argues that the 15-day clock runs from its notice of proposed graduation in March.[4] (Letter at 3.) It does not. The triggering date is the district's "proposed action," here, T.C.'s <u>graduation</u> on June 21, 2012. To invoke Stay-Put, Plaintiffs needed to file a request before June 21, 2012, which they did—filing a petition on April 10, 2012. (*See* Ex. 1.)[5] As this Court has previously noted, to the extent that the school district argues that the parent and student "failed to contest

---

[4]   Mt. Olive also argues that Plaintiffs failed to challenge T.C.'s October 2011 IEP until March 2012. This is equally, if not more, unavailing for the reasons set forth above.
[5]   Exhibit 1 is annexed to the accompanying Declaration of Jenna Statfeld Harris.

11

the proposed IEP which established a [set date for] graduation in a timely manner, . . . Defendant cites no specific rule, section of the administrative code, or other legal authority in support of this position." *B.A.W.*, 2010 WL 3522096 at *4, n. 8. Notably, Plaintiffs filed their petition less than 15 days after their receipt of notice of proposed graduation on March 27, 2012, which Mt. Olive argues is the date from which the 15-day timeline runs.

### V. The Stay-Put Placement Must Consider a Child's Current Needs

Mt. Olive states that considering a student's current needs in implementing the Stay-Put placement would be "inconsistent with the IDEA." (Letter at 12.) This is simply not the case. The "current educational placement" required by the Stay-Put provision must consider the student's "present levels of academic achievement and functional performance" and establish "corresponding goals and objectives." *Anchorage Sch. Dist.* v. *M.P.*, 689 F.3d 1047, 1054-57 (9th Cir. 2012). Further, "because Congress did not intend to freeze an inappropriate placement for the review period," a court may "modify a child's placement so that the child is given an appropriate placement during the pendency of administrative and judicial appeals." *Cronin*, 689 F. Supp. at 202, n.3.

Mt. Olive also argues that Plaintiffs provided no documentation of T.C.'s current needs. (Letter at 10.) In fact, Plaintiffs provided ample documentation and expert testimony regarding T.C.'s needs in the Office of Administrative Law and

in their Complaint before this Court. Mt. Olive has never asked for additional documentation.

### VI. The Preliminary Injunction Standard of Rule 65 Does Not Apply Here, But Plaintiffs Would Meet That Standard

Plaintiffs' Motion illustrated that the Stay-Put provision functions as an "automatic preliminary injunction," and that the traditional preliminary injunction standard does not apply. (Motion at 11-13.) The three cases that Mt. Olive presents to challenge this framework (Letter at 13), are either irrelevant or actually support Plaintiffs' position. Both *Johnson* and *M.K.* are about appellate review of pre-existing Stay-Put orders by a district court, and not about the original review. *See Johnson* v. *Special Educ. Hearing Office*, 287 F.3d 1176, 1880 (9th Cir. 2002) (holding that a "preexisting 'stay put' order" should be reviewed by applying the traditional preliminary injunction analysis, and distinguishing cases dealing with "a district court's original grant or denial" of Stay-Put.); *M.K.* v. *Roselle Park Bd. of Educ.*, No. 06-4499 (JAG), 2006 WL 3193915, at *9-*10 (D.N.J. 2006) (same, citing to *Johnson*). Mt. Olive also cites *Pardini* v. *Allegheny Intermed. Unit*, 420 F.3d 181, 188-89 (3d Cir. 2005), which actually overturned a district court's review of a Stay-Put request, noting that "the District Court's error was compounded (or perhaps facilitated) by its reliance upon an analysis more appropriately utilized for ruling upon preliminary injunctions than enforcing

13

[IDEA]'s stay-put rule" for which "Congress has already balanced the competing harms as well as the competing equities."

Even if Congress had not already "balanced the competing harms" and determined that a student with disabilities should remain in his or her current placement until the underlying proceeding is resolved, *Drinker*, 78 F.3d at 864, T.C. has provided ample evidence of his harm (Motion at 12), and it would not be the case that Mt. Olive would be harmed, as Mt. Olive alleges. (Letter at 14.) In fact, an enforcement of T.C.'s Stay-Put right would simply ensure that Mt. Olive provided the educational and related services to which T.C. has been entitled since June 2012.[6]

---

[6] In addition, as Mt. Olive suggests (Letter at 2), a court may consolidate the hearing on a motion for preliminary injunction with the trial on the merits, but it may do so solely by advancing the trial on the merits. Fed. R. Civ. P. 65(a). A court is not authorized to consolidate and thereby defer its ruling on a motion for preliminary injunction. *Id.* Accordingly, and due to the significant harm to T.C. that is at stake, Plaintiffs respectfully request that this Court address their Motion without delay.

## CONCLUSION

Accordingly, for the reasons set forth in Plaintiffs' Motion, and for the reasons set forth herein, Plaintiffs respectfully request that the Court grant their application for a preliminary injunction implementing the Stay-Put provision, reversing T.C.'s "graduated" status and ordering Mt. Olive to reinstate and implement T.C.'s then-current educational placement for the pendency of T.C.'s IDEA judicial proceedings.

Dated:    New York, New York
          January 14, 2013

        Respectfully submitted,

        PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

By: _____
        Jenna S. Harris (jharris@paulweiss.com)
        1285 Avenue of the Americas
        New York, New York  10019-6064
        Tel.   (212) 373-3879
        Fax.   (212) 492-0879

EDUCATION LAW CENTER

        Ruth Deale Lowenkron
        (rlowenkron@edlawcenter.org)
        60 Park Place, Suite 300
        Newark, N.J.  07102
        Tel.   (973) 624-1815
        Fax.   (973) 624-7339

*Attorneys for Plaintiffs D.C. o/b/o T.C. and D.C.*